A verdict of guilty was returned by the jury against the defendant on seven counts of promoting obscenity in violation of General Statutes 53a-194
as charged in the information.
The statements of fact contained in the briefs indicate no dispute as to the underlying facts. On October 12, 1972, a police officer purchased five magazines and two films from the defendant in a separate section, denominated the "Smut Hut," of the S J Variety Store on Osborne Street, Danbury. The five magazines bear the titles "Climax," Sex Porno Danish International No. 209; "Climax," Sex Porno Danish International No. 210; "Climax," Sex Porno Danish International No. 211; "Climax," Sex Porno Danish International No. 212; and "Marital Bed." During the argument of this appeal, the defendant conceded that all of those items were so-called hard core pornography. At the trial the defendant testified that he was familiar with their contents and character.
The first point raised by the defendant on this appeal is that the trial court erred in overruling his demurrer which was grounded on the claim that53a-194 of the General Statutes was unconstitutional for overbreadth and vagueness. We recently rejected the same contention in a similar case and we are not inclined to disturb that' holding. State v. Magee, 32 Conn. Sup. 639.
The defendant also claims that because his arrest had occurred before the establishment by the decision in Miller v. California, 413 U.S. 15
(Miller I), of current definitive criteria for valid obscenity regulation, the fact that 53a-194 may now be construed as meeting those criteria would not permit its application to prior events. In some states, where judicial construction salvaged the existing *Page 682 
obscenity statutes by confining them within the limits that Miller I prescribed, courts have set aside convictions based on arrests which had occurred before the incorporation of the Miller I standards into the statutes. Those convictions were set aside on the ground that the statutes and precedents existing at the time of the acts involved did not provide fair notice or warning of what conduct would be deemed unlawful. State v. Welke, 298 Minn. 402; State v. De Santis, 65 N.J. 462
. In State v. Magee, supra, we held that 53a-194
met the Miller I criteria without the need for any judicial construction limiting its terms since those terms had already been limited by statutory definitions and by cases decided long before. State v. Andrews, 150 Conn. 92, 97; State v. Sul,146 Conn. 78, 85; State v. Onorato, 3 Conn. Cir. Ct. 438, 441; State v. Keyhole Publishing Co., 3 Conn. Cir. Ct. 354, 358. We concluded, therefore, that well-established statutory and case law in existence at the time of the incidents involved provided adequate notice of the prohibited conduct and we upheld the convictions. The same result ultimately followed in California after Miller I had been remanded for the court to consider its obscenity statutes, essentially similar to ours, in the light of the standards announced by the United States Supreme Court. Miller v. California,418 U.S. 915 (Miller II). Those cases are dispositive of the claim that the conviction of the defendant for conduct occurring before Miller I would involve an unconstitutionally retroactive application of our obscenity statute.
The defendant's claim that expert testimony was essential to establish the nature of the community standards which he was found to have offended was also rejected in State v. Magee, supra.
The defendant claims error in the charge to the jury that the community standards to be applied *Page 683 
were those of the state of Connecticut rather than those of the city of Danbury. The trial of this case took place before 53a-193 was amended to specify that in applying "community standards, the state of Connecticut is deemed to be the community,"[1] but after the national standard test established in Jacobellis v. Ohio, 378 U.S. 184, had been eradicated by Miller I. The use of a state-wide community standard has been approved as a matter of federal constitutional law. Jenkins v. Georgia, 418 U.S. 153, 157; Hamling v. United States, 418 U.S. 87, 105; Miller v. California,413 U.S. 15, 31. In the absence of a statutory declaration, some courts have chosen a more limited geographical area for the community, particularly where the state may include areas of diverse cultural background. Brazelton v. State,50 Ala. App. 723; Gent v. State, 239 Ark. 474. There is no suggestion in the evidence, however, of any difference between the Danbury area and the rest of the state as to the degree of sexually provocative material that would be tolerated by the community. Without such an indication, we can assume neither that the Danbury populace would be any more permissive in those matters than would other areas of the state nor that the selection of the entire state as the community harmed the defendant. In view of the size of our state, as well as the mixture and distribution of its population, we regard as appropriate the choice made by the trial court, which the legislature also has now confirmed.
We regard as virtually frivolous the several other exceptions to the charge briefed by the defendant, including the instruction that the jury need not be concerned with the matter of punishment or with the ultimate effects of a guilty finding and, also, the references to the defendant as an "accused" *Page 684 
and to the "so-called expert" testimony. Similarly, little discussion is warranted by the claim that the defendant's motion for mistrial should have been granted because of the numerous objections made by the prosecutor during the examination of the defendant's expert witness. Only fourteen of the forty-two objections made during the questioning of that witness were overruled, and even those objections were not wholly unfounded. There is no indication of any harassment of the defendant in the presentation of his case.
The remaining claim of the defendant is that it was improper to charge him with four separate counts of promoting obscenity when four of the magazines purchased from him were contained in a clear plastic wrapper and sold at one price for the package. He claims that only a single act was involved in that transaction. There is no evidence that the defendant performed any act relating to one of the magazines as a separate item which might constitute promoting obscenity as charged in the information.
"If a person steals four horses from the barn of another, all being of different color, it would not be competent to charge the thief with four different larcenies when the horses were all taken at the same time and place." Braden v. United States, 270 F. 441, 443-44 (8th Cir.). "Merely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts and designating only one of the persons or things in one count and designating only the other person or thing in the other count." Robinson v. United States, 143 F.2d 276, 277 (10th Cir.).
The classic test of multiplicity is whether the legislative intent is to punish individual acts *Page 685 
separately or to punish only the course of action which they constitute. Blockburger v. United States,284 U.S. 299, 302. Here we are concerned with a single act of promoting obscenity by selling one package containing four magazines. If the contention were sound that more than one offense might be spelled out of that action of the defendant, why were separate counts not used for each lewd photograph or article included in each magazine? That reductio ad absurdum illustrates the soundness of the principle that the same act cannot constitute the same offense more than once, although it may give rise to more than one offense where it encompasses elements of different crimes. State v. Andrews,108 Conn. 209, 215. Unless a clear intention to fix separate penalties for each obscene item involved is expressed in the statute, the issue should be resolved against turning a single transaction into multiple offenses. Bell v. United States, 349 U.S. 81,84.
This discussion of the problem of multiplicity would be of academic interest only had not the trial court imposed fine and a jail sentence on each count. See State v. Rocco, 109 Conn. 571,573. The state relies on Practice Book 531 which provides that no appeal or motion made after verdict shall be sustained for misjoinder, duplicity, or uncertainty unless the accused was in fact, prejudiced and a substantial injustice was done him because of the defect. The rule does not apply in its terms to multiplicity, although the same principle is applicable. Multiplicity is not to be confused with duplicity, which is the obverse defect of including more than one offense in a single count. 5 Anderson, Wharton's Criminal Law and Procedure, p. 29 1932. We cannot, as the state contends, assume that there has been no prejudice or injustice because the effective sentence on all counts did not exceed the *Page 686 
maximum penalty which could have been imposed under the statute if three of the counts had not been included.
The seven counts of the information are identical except for the dates. October 12, 1972 was alleged for the first five counts, and October 13, 1972, for the sixth and seventh counts. During argument of this appeal counsel agreed that the first four counts applied to the four magazines sold in the single package. The judgment should be corrected, therefore, by setting aside the verdict of guilty and the sentence imposed on the second, third, and fourth counts, leaving undisturbed the verdicts and sentences on the first, fifth, sixth, and seventh counts.
 There is error in respect to the findings of guilty and the sentences on the second, third, and fourth counts, and the case is remanded with direction to correct the judgment in accordance with this opinion.
In this opinion PARSKEY and SPONZO, Js., concurred.