The defendant appeals from his conviction on four counts of promoting an obscene performance in violation of General Statutes 53a-194. The facts giving rise to the charges are essentially the following: In December, 1979, and January, 1980, the *Page 571 
defendant was the liquor permittee of a cafe in East Hartford known as the Venus Lounge. The cafe consisted of a large room with a long bar opposite a small square stage which was raised approximately three feet above the floor. The stage was surrounded on three sides by tables and chairs. The fourth side abutted a wall which was covered by a large mirror. As an attraction the business featured several female "exotic" dancers who would each perform a solo dance routine on the stage to the music of a jukebox.
On the evening of December 19, 1979, Officer Robert Kenary of the East Hartford police department and Officer James Malcolm of the Hartford police department went to the Venus Lounge to investigate complaints by local residents of obscene dances taking place. Upon entering, the officers observed a woman take the stage fully dressed and proceed to remove all her clothes. She then put on a "G-string" bikini and began her dance. During the course of her routine, several patrons sitting near the stage held up paper money. When this occurred the dancer would come over to the edge of the stage and squat or kneel in front of a patron, who would then "stuff" the money into the bottom portion of her bikini. In addition, she allowed some of the patrons to fondle her breasts. She also briefly exposed her breasts and genital area several times during her dance. After she finished, another woman came on stage and performed a similar routine. The officers observed that the defendant was present on this occasion.
On the evening of January 9, 1980, the officers returned to the cafe and again observed two similar dances. On this occasion, however, the defendant was not seen on the premises.
Based on these observations, Kenary submitted an application for an arrest warrant with accompanying affidavits in which he attested that there was probable *Page 572 
cause to believe the defendant was guilty of four counts of promoting an obscene performance, two on December 19, 1979, and two on January 9, 1980. The warrant was issued on January 17, 1980, and executed the following day.
 I
The first claim of error raised by the defendant on appeal is that the trial court erred in denying his motion to dismiss the warrant for lack of probable cause. We believe there is merit to this claim as to counts three and four relating to the events of January 9, 1980.
The procedural rule is stated as follows: Before a warrant for arrest can issue, the judicial officer issuing such a warrant must be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. U.S. Const., amends. IV andXIV; Conn. Const., art. I § 7; Spinelli v. United States,393 U.S. 410, 413 n. 3, 89 S.Ct. 584,21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 109n,84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); State v. Arpin, 188 Conn. 183, 193, 448 A.2d 1334 (1982). In testing the validity of a warrant, the reviewing court can only consider information brought to the magistrate's attention. Whiteley v. Warden, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031,28 L.Ed.2d 306 (1971); Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245,2 L.Ed.2d 1503 (1958); State v. Jackson, 162 Conn. 440,443, 294 A.2d 517, cert. denied, 409 U.S. 870,93 S.Ct. 198, 34 L.Ed.2d 121 (1972). The purpose of this rule is that "the magistrate must be informed of some of the underlying circumstances . . . . Otherwise, `the inferences from the facts which lead to the complaint' will be drawn not `by a neutral and detached magistrate,' as the Constitution requires, but instead by a police officer . . . ." Aguilar v. Texas, supra, 114-15. *Page 573 
"A magistrate is entitled to rely on the ordinary dictates of common experience and on his own common sense; Spinelli v. United States, 393 U.S. 410,415, 419, 89 S.Ct. 584, 21 L.Ed.2d 637
[1969]; State v. Jackson, supra, 445; and is `allowed to draw normal inferences from the facts alleged in the requesting officer's affidavit, . . . including inferences based upon the usual procedures of the offenders of the statute in question.' Rutledge v. United States,283 A.2d 213, 215 (D.C.App. [1971])." State v. Romano,165 Conn. 239, 245, 332 A.2d 64 (1973). Where, however, the affidavit contains nothing but a mere legal conclusion that the accused committed a crime, the warrant is void. Whiteley v. Warden, supra; Giordenello v. United States, supra. Similarly, "a bald and unilluminating assertion of suspicion" that the defendant is guilty of the crime charged "is entitled to no weight in appraising the magistrate's decision." Spinelli v. United States, supra, 414; Nathanson v. United States,290 U.S. 41, 46, 54 S.Ct. 11, 78 L.Ed. 159 (1933).
Stated another way, the affidavit "must provide the affiant's answer to the magistrate's hypothetical question, `What makes you think that the defendant committed the offense charged?'" Jaben v. United States, 381 U.S. 214, 224,85 S.Ct. 1365, 14 L.Ed.2d 345, reh. denied, 382 U.S. 873,86 S.Ct. 19, 15 L.Ed.2d 114 (1965); State v. Saidel, 159 Conn. 96, 100, 267 A.2d 449 (1970). Thus, the affidavit must recite sufficient facts from which the magistrate can make a determination that probable cause exists as to each element of every crime charged. The affidavits pertaining to counts three and four do not meet this requirement.
General Statutes 53a-194 (a) provides: "A person is guilty of obscenity when, knowing its content and character, he promotes . . . any obscene material or performance." Knowledge of the content and *Page 574 
character of an obscene performance is an essential element of the offense alleged in each count of the information. The affidavits describing the events of January 9 do not contain a statement that the defendant had knowledge of the content and character of the obscene performance. Nor do they disclose facts from which a neutral judicial officer could reasonably and logically infer that the defendant had such knowledge. In fact, the affiant, Kenary, stated that "[t]he permittee of the establishment was not seen by either the undersigned or Officer Malcolm. The lounge appeared to be under the control of the manager, Mr. Steven Silver." The bare assertion that the defendant was the permittee does not, in our opinion, give rise to a permissible inference that the defendant had knowledge that the content and character of the dances on this occasion were obscene. He was not present when they took place. The premises were under control of the manager. The dancers were hired through an independent agency and the incidents of nudity during the dance routines were relatively brief.
Accordingly, we conclude that as to counts three and four of the information, the warrant was legally insufficient. Therefore, the defendant's conviction on those charges, cannot stand. State v. Licari, 153 Conn. 127, 132-34, 214 A.2d 900 (1965).
 II
We turn next to the question of the number of obscene performances which took place on December 19, 1979. The state charged the defendant with two counts based upon two separate dance routines observed by the officers. We find that he should properly have been charged with only one.
General Statutes 53a-193 (d) defines "performance" as "any play, motion picture, dance or other exhibition performed before an audience." Webster, New World Dictionary (2d Ed.) defines "performance" *Page 575 
as: "4. a) a formal exhibition or presentation before an audience, as a play, musical program, etc.; show b) one's part in this."
In State v. Cimino, 33 Conn. Sup. 680,366 A.2d 1168 (1976), this court held that where the defendant sold four obscene magazines in a single package, he could only be charged with one violation of the obscenity statute. Our holding was based on the decision of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306
(1932), which laid down the firmly established principle that multiple punishments cannot be imposed for two offenses arising out of the same criminal transaction unless each requires proof of a fact which the other does not.
We believe that the rationale of Cimino should apply to the facts in the case before us. In Cimino, we stated: "If the contention were sound that more than one offense might be spelled out of that action of the defendant, why were separate counts not used for each lewd photograph or article included in each magazine? That reductio ad absurdum illustrates the soundness of the principle that the same act cannot constitute the same offense more than once, although it may give rise to more than one offense where it encompasses elements of different crimes. State v. Andrews, 108 Conn. 209, 215 [142 A. 840 (1928)]. Unless a clear intention to fix separate penalties for each obscene item involved is expressed in the statute, the issue should be resolved against turning a single transaction into multiple offenses. Bell v. United States, 349 U.S. 81, 84
[75 S.Ct. 620, 99 L.Ed. 905 (1955)]." State v. Cimino, supra, 685.
In the present case, we hold that the events of December 19, 1979, were part of a single performance: Each dancer performed a routine approximately twenty minutes in duration; each dance immediately followed the preceding one; and the audience, although not required to pay an admission, could *Page 576 
remain for the entire series of dances, and was not required to leave after each dancer finished her routine. Cf. People v. Bercowitz, 61 Misc.2d 974,975, 308 N.Y.S.2d 1 (1970) (play consisting of twenty-three separate sexual acts considered single performance). Thus, having determined that there was only one performance, it is clear to us that the defendant's conviction on the two counts, one and two, was error. To hold otherwise would run counter to the prohibition against multiple punishments for the same offense implicit in the double jeopardy clause of the fifth amendment to the United States Constitution. Whalen v. United States, 445 U.S. 684, 688, 100 S.Ct. 1432,63 L.Ed.2d 715 (1980); Benton v. Maryland, 395 U.S. 784,793-96, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); North Carolina v. Pearce, 395 U.S. 711, 717,89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Langley, 156 Conn. 598, 600-601, 244 A.2d 366
(1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 726,21 L.Ed.2d 712 (1969).
Accordingly, we conclude that the defendant's conviction on count two of the information cannot stand. See Lash v. State, 414 N.E.2d 338, 344
(Ind.App. 1981); Sours v. State, 603 S.W.2d 592,606 (Mo. 1980).
 III
With respect to the remaining count, the first count, the defendant claims that the trial judge erroneously admitted testimony of, the supervisor of inspectors of the liquor control commission relating to a permittee's liability under the commission's regulations. The witness was permitted to testify, over the several objections of the defendant, that under the regulations "the permittee is held strictly accountable for the conduct of the permit premises," and that the regulations "have the same effect as law." We agree with the defendant's contention and conclude that the testimony should not have been admitted. *Page 577 
The state argues that the testimony was offered solely "to show the connection the defendant had with the premises and the control the defendant as permittee could have exercised." Therefore, the state claims, it was relevant and admissible. While it is true that the commission's regulations may be probative of the issue of the defendant's control over the premises, we cannot condone the manner and form by which this evidence was presented to the jury through the testimony of the supervisor of state liquor inspectors.
It is fundamental that a witness is incompetent to offer a legal opinion; Tait LaPlante, Handbook of Connecticut Evidence 7.17(b); and that questions calling for legal conclusions are improper. Tait LaPlante, op. cit. 7.12 (c).[1] In the present case, the witness was asked to describe the legal responsibilities of the permittee. In response he stated that "[t]he permittee must devote his or her entire time to the operation and conduct of the permit premises and the permittee is held strictly accountable for the conduct of the permit premises." The witness was permitted to give his expert interpretation of the liquor regulations. In effect, by his position and official opinion, he was concluding the guilt of the defendant. He was allowed to testify as to the ultimate issue of the prosecution, the guilt or innocence of the defendant, which is within the exclusive province of the jury. This was clearly erroneous.
Despite the limiting instruction given by the trial judge, the testimony unduly prejudiced the right of the defendant to have the state prove beyond a reasonable doubt all the elements of the crime with which he was charged. See Mullaney v. Wilbur, 421 U.S. 684, 698, 95 S.Ct. 1881,44 L.Ed.2d 508 (1975); In re Winship, 397 U.S. 358, 364, *Page 578 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Reid, 154 Conn. 37,40-41, 221 A.2d 258 (1966). Moreover, as the defendant correctly notes, the liquor commission's regulations are a proper subject for judicial notice. Roden v. Connecticut Co., 113 Conn. 408,416, 155 A. 721 (1931); Tait LaPlante, op. cit. 6.3(a)(2); Wharton, Criminal Evidence 45 (13th Ed. Torcia); 31 C.J.S. 980, Evidence 39. Accordingly, we hold that the court properly should have excluded the testimony.
 There is error, the judgment is set aside, and the case is remanded with direction to dismiss counts two, three and four and for a new trial solely as to count one.
In this opinion DALY and COVELLO, Js., concurred.