### STATE OF CONNECTICUT *v.* CURTISS HEINZ
### (11930)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

---

Argued May 10—decision released July 10, 1984

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *Rosita Creamer,* assistant state's

attorney, and *Maureen Platt,* deputy assistant state's attorney, for the appellant-appellee (state).

*Vincent J. Trantolo,* for the appellee-appellant (defendant).

PETERS, J. The principal issue in this case is whether affidavits accompanying an application for a warrant for arrest established probable cause to arrest the defendant on a charge of promoting an obscene performance. The defendant, Curtiss Heinz, was charged with four counts of promoting an obscene performance in violation of General Statutes § 53a-194, the first two counts relating to events that occurred on December 19, 1979, and the latter two counts relating to events that occurred on January 9, 1980. After a trial to a jury, the defendant was convicted on all four counts. The Appellate Session of the Superior Court determined that counts two, three and four should be dismissed. Prosecution under count two was held barred, on double jeopardy grounds, because of the close factual nexus between that count and the first count. Prosecution under counts three and four was held barred because of the legal insufficiency of the warrant with respect to those counts. With respect to the remaining count, count one, the Appellate Session found that an evidentiary error on the part of the trial court required a new trial. We granted petitions for certification from both the defendant and the state and consequently have two appeals before us. We find no error on the defendant's appeal, but error on the state's appeal.

The facts of this case are set forth in the opinion of the Appellate Session. "In December, 1979, and January, 1980, the defendant was the liquor permittee of a cafe in East Hartford known as the Venus Lounge. The cafe consisted of a large room with a long bar opposite a small square stage which was raised approximately three feet above the floor. The stage was sur-

rounded on three sides by tables and chairs. The fourth side abutted a wall which was covered by a large mirror. As an attraction the business featured several female 'exotic' dancers who would each perform a solo dance routine on the stage to the music of a jukebox.

"On the evening of December 19, 1979, Officer Robert Kenary of the East Hartford police department and Officer James Malcolm of the Hartford police department went to the Venus Lounge to investigate complaints by local residents of obscene dances taking place. Upon entering, the officers observed a woman take the stage fully dressed and proceed to remove all her clothes. She then put on a 'G-string' bikini and began her dance. During the course of her routine, several patrons sitting near the stage held up paper money. When this occurred the dancer would come over to the edge of the stage and squat or kneel in front of a patron, who would then 'stuff' the money into the bottom portion of her bikini. In addition, she allowed some of the patrons to fondle her breasts. She also briefly exposed her breasts and genital area several times during her dance. After she finished, another woman came on stage and performed a similar routine. The officers observed that the defendant was present on this occasion.

"On the evening of January 9, 1980, the officers returned to the cafe and again observed two similar dances. On this occasion, however, the defendant was not seen on the premises.

"Based on these observations, Kenary submitted an application for an arrest warrant with accompanying affidavits in which he attested that there was probable cause to believe the defendant was guilty of four counts of promoting an obscene performance, two on December 19, 1979, and two on January 9, 1980. The

warrant was issued on January 17, 1980, and executed the following day." *State* v. *Heinz,* 38 Conn. Sup. 570, 571–72, 455 A.2d 346 (1982).

## I

The defendant's appeal questions the Appellate Session's order granting him a new trial on the first count of the information. He maintains that: (1) his motion to dismiss should have been granted because there was no probable cause for his arrest; (2) his motions for acquittal should have been granted because the state failed to establish the essential elements of the crime beyond a reasonable doubt; and (3) disputed evidence about liquor control commission regulations should be entirely barred from his retrial. We find these claims of error unpersuasive.

## A

The defendant argues that the application for the arrest warrant and the supporting affidavits of Officer Kenary failed to provide information sufficient to establish probable cause for his arrest for violation of General Statutes § 53a-194 (a). In the absence of probable cause, under the holding of *State* v. *Licari,* 153 Conn. 127, 132–34, 214 A.2d 900 (1965), he was, he claims, entitled to dismissal of count one. Although the state, in order to test the continuing validity of *State* v. *Licari,* concedes that the arrest warrant failed to recite probable cause, that concession cannot compel this court to find error in the judgment to the contrary reached by both the trial court and the Appellate Session. We have decided to consider this issue on the merits.

The validity of an arrest warrant depends upon whether the application for the warrant and the accompanying affidavit establish probable cause to believe that: (1) a crime has been committed; and (2) the per-

son to be arrested committed that crime. General Statutes § 54-2a (a) (1);[1] Practice Book § 593; *State* v. *Daley,* 189 Conn. 717, 720, 458 A.2d 1147 (1983); *State* v. *DeChamplain,* 179 Conn. 522, 529, 427 A.2d 1338 (1980); 1 LaFave, Search and Seizure (1978) § 3.7. The affidavit must recite sufficient facts so that the judicial officer who issues the warrant can, relying solely on the information thus brought to his or her attention, make an independent determination that probable cause exists as to each element of every crime charged. U.S. Const., amends. IV and XIV; Conn. Const., art. I, § 7; *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983); *Whiteley* v. *Warden,* 401 U.S. 560, 565 n.8, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971); *State* v. *Bember,* 183 Conn. 394, 409–10, 439 A.2d 387 (1981); *State* v. *Jackson,* 162 Conn. 440, 443, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972).

In our review to determine the sufficiency of an affidavit to establish probable cause we operate under two constraints. One inheres in the standard of probable cause to arrest. That standard is less demanding than that which attends an inquiry into whether there has been a prima facie showing of criminal activity. See Practice Book § 815 (5). Instead, all that is required is that the affidavit, read in a common-sense manner, give objective evidence of a fair probability that proscribed activity has occurred. *Illinois* v. *Gates,* supra, 2330, 2332; *Torres* v. *Puerto Rico,* 442 U.S. 465, 471, 99 S. Ct. 2425, 61 L. Ed. 2d 1 (1979); *Spinelli* v. *United States,* 393 U.S. 410, 419, 89 S. Ct. 584, 21 L. Ed. 2d

[1] General Statutes § 54-2a (a) (1) provides: "ISSUANCE OF BENCH WARRANTS OF ARREST, SUBPOENAS AND WARRANTS. (a) In all criminal cases the superior court, or any judge thereof, may issue (1) bench warrants of arrest upon application by a prosecutorial official if the court or judge determines that the affidavit accompanying the application shows that there is probable cause to believe that an offense has been committed and that the person complained against committed it . . . ."

637 (1969); *State* v. *Jackson,* supra, 445. The other constraint inheres in the substantial deference to be accorded to the decision of the judicial authority that issued the warrant. That deference is mandated by our constitutions' strong preference that arrests, like searches, are normally to be conducted pursuant to a warrant. *Massachusetts* v. *Upton,* 466 U.S.      , 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984); *Illinois* v. *Gates,* supra, 2331, *United States* v. *Ventresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *State* v. *Bember,* supra, 412–13; *State* v. *DeChamplain,* supra, 527, 533; *State* v. *Jackson,* supra, 445.

Recognizing these constraints, we must examine the affidavits before us to determine whether they establish probable cause that the defendant committed the crime of promoting an obscene performance under General Statutes § 53a-194.[2] The crime described by that stat-

---

[2] "[General Statutes] Sec. 53a-194. OBSCENITY: CLASS B MISDEMEANOR. (a) A person is guilty of obscenity when, knowing its content and character, he promotes, or possesses with intent to promote, any obscene material or performance."

General Statutes § 53a-193 provides in relevant part:

"Sec. 53a-193. DEFINITIONS. The following definitions are applicable to sections 53a-193 to 53a-196a, inclusive:

"(a) Any material or performance is 'obscene' if, (1) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, (2) it goes substantially beyond customary limits of candor in describing or representing such matters, and (3) it is utterly without redeeming social value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for some other specially susceptible audience. Whether a material is obscene shall be judged by ordinary adults applying contemporary community standards. In applying contemporary community standards, the state of Connecticut is deemed to be the community.

*   *   *

"(d) 'Performance' means any play, motion picture, dance or other exhibition performed before an audience.

"(e) 'Promote' means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, advertise, produce, direct or participate in."

ute contains three essential elements: (1) the accused must have knowledge of the content and character of the performance; (2) the accused must have promoted the performance; and (3) the performance must have been obscene. The defendant challenges the sufficiency of the affidavits with respect to each of these elements. He thus puts into issue both the commission of a crime and his own participation therein. We conclude that there was probable cause to issue a warrant with respect to the first count.

The two affidavits of Officer Kenary related to events that transpired on December 19, 1979, and January 9, 1980.[3] They indicated that, on each date, Kenary,

[3] The application for an arrest warrant and the accompanying affidavits read as follows:

### "APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above named accused on the basis of the facts set forth in the affidavit below.

Signed (Prosecuting Attorney)
1/16/80 /s/ C. J. Shea

### AFFIDAVIT

The undersigned, being duly sworn, deposes and says: That he is a member of the East Hartford, Connecticut Police Department and has been a member of said department for approximately Six (6) years prior to the date hereof and at all times mentioned herein was acting as a member of said department and the following facts and circumstances are stated from personal knowledge and observations and recount recent events:

1. On the 19th day of December 1979, a Wednesday, Detective Sergeant George F. Dayton assigned Investigator Robert F. Kenary to investigate allegations that obscene performances were taking place at the "Venus Lounge" of 1268 Main Street in East Hartford, Connecticut. East Hartford, Connecticut is the jurisdiction of the undersigned.

2. For purposes of this investigation Sergeant Dayton thought it necessary to utilize a police officer unknown in East Hartford, Connecticut to prevent recognition. Hartford Police Officer James Malcolm was employed to accompany the undersigned. Officer Malcolm is a sworn member of the Hartford Police Department with Fourteen (14) years of service and is presently employed within the Hartford Police Department's Intelligence Division.

3. On Two (2) [separate occasions] (1) the 19th of December 1979 and (2) the

accompanied by Hartford Police Officer Malcolm, had entered the Venus Lounge in East Hartford, and had there observed performances, specifically described, involving dancers who, while scantily clad, had engaged

9th of January 1980, The undersigned and Officer Malcolm entered the Venus Lounge at 1268 Main Street in East Hartford, Connecticut for purposes of investigating the allegations of obscene performances. On both dates, 12/19/79 and 1/9/80, the undersigned and Officer Malcolm did observe, personally, Four (4) obscene performances carried out by Four (4) different female dancers. Two of the performances were witnessed on the 19th of December 1979 and another Two on the 9th of January 1980.

4. Affidavits documenting the obscene performances (Para. 3) are attached to this arrest warrant application.

5. Mr. Curtiss Heinz, the accused, of 217 Griswold Street in Glastonbury, Connecticut, is the permittee of the "Venus Lounge" in East Hartford, Connecticut.

6. On the basis of the facts set forth in this arrest warrant application The East Hartford Police Department believes probable cause does exist for the arrest of Mr. Curtiss Heinz for violation of Connecticut General Statute Section 53a-194 (Four Counts). Four [separate] performances by Four [separate] performers was witnessed by undersigned and Officer James Malcolm.

11 January 1980

Signed: (Affiant)
/s/ Robert Francis Kenary

\*   \*   \*

### AFFIDAVIT OF ROBERT F. KENARY

The undersigned, being duly sworn, deposes and says that the undersigned is a full time member of the East Hartford Police department and has been so serving for the past Five and One-Half years. Furthermore, the undersigned is currently serving the East Hartford Police Department as Identification Officer and has held that position for Four years.

On the 19th day of December 1979, a Wednesday, at approximately 7:00 P.M., Detective Sergeant George F. Dayton assigned the undersigned and Hartford Police Officer James Malcolm to enter The Venus Lounge of 1268 Main Street in East Hartford, Connecticut for the purpose of investigating reports of obscenity in that particular establishment.

The undersigned and Officer Malcolm entered the Venus Lounge at approximately 7:35 P.M., on the 19th of December 1979, and sat down directly adjacent to the small, square stage area. The stage measures approximately 8′ by 8′, and is elevated off the floor about forty inches.

As the undersigned and Officer Malcolm were entering one female dancer was apparently ending her dance and a dancer called "Cindy," by patrons

in repeated physical encounters with customers in exchange for gratuities. The affidavit concerning the December 19 incidents identified the defendant as the permittee of the Venus Lounge. The accompanying affidavit concerning the January 9 incidents did not

---

began her act on stage which was comprised of dancing to music from a juke box. "Cindy" began her dance fully clothed wearing blue jeans, a sweater over a turtle neck. While dancing within about three minutes into her act "Cindy" was completely naked.

The naked dancer, "Cindy," still dancing, began to put on her dancing costume which consisted of a bikini style, two piece outfit which covered the breasts and the genital areas leaving buttocks exposed.

Cindy's dance went on for five or six record playings. During the dances Cindy, on numerous [occasions], completely exposed her breasts and partially exposed the genital area. Furthermore, on approximately four [occasions], male patrons of the lounge would hold up dollar bills which summoned the dancer (Cindy in this instance) to them. The male patron would then take the dollar bill (Appeared to the One dollar denomination of U.S. Currency) and slowly place it into the genital area of the dance costume. One of the male patrons, while inserting the money, was holding onto Cindy's breast.

Cindy was relieved of her dancing duties by another female dancer called "Loralee." Loralee (Phonetic spelling) began her routine clad in a multi-colored bikini type outfit that covered the breasts and the genital area, but left the buttocks exposed. Again, juke box music was used for dancing and upon numerous [occasions] Loralee exposed her breasts and partially her genital area.

Loralee was also called by male patrons of the lounge by waving the dollar bill. Loralee would go over to that patron's position and allow the patron to place the currency into the genital area of the bikini type outfit. When the patron places the money into the bikini the bikini is pulled away from the genital area, fully exposing the genital area, and the patron slowly introduces the dollar into place while actually feeling the genital area and kissing the dancer's mouth.

While these two dancers performed [their] dances the permittee, Mr. Curtiss Heinz was present as was the manager of the establishment, Mr. Steven Silver.

It is the feeling of the undersigned and Officer James Malcolm that an on site arrest in these cases (As outlined) would be an unsafe practice for the officers as well as patrons of the lounge.

The patrons are consuming alcoholic beverages and some of the patrons appear to be sexually attracted to the performance. The crowd on the 19th of December 1979 numbered approximately 60–75 people of which all were

expressly identify the defendant as the permittee but stated that "the permittee . . . was not seen" by the officers. On December 19, 1979, the defendant was present during the performances, while on January 9, 1980, he was not.

male. Therefore, The undersigned will apply for arrest warrant applications in this case to allow the police department to pick the time of arrest to lessen the potential for violence.

The above and attached Two page affidavit is true and correct to the best of my knowledge and belief.

Signed /s/ Robert F. Kenary

\* \* \*

### AFFIDAVIT OF ROBERT F. KENARY

The undersigned, being duly sworn, deposes and says that he is a member of the East Hartford, Connecticut Police Department and has been a member of said department for approximately Six (6) years prior to the date hereof and at all times mentioned herein was acting as a member of said department and the following facts and circumstances are stated from personal knowledge and observations and recount recent events:

In connection with an ongoing investigation the undersigned and Officer James Malcolm entered the "Venus Lounge" at 1268 Main Street in East Hartford, Connecticut for the purpose of investigating allegations that obscene performances were taking place at that establishment. The undersigned and Officer Malcolm entered the lounge, this the second time, at approximately 6:58 P.M., on the 9th of January 1980, a Wednesday.

The permittee of the establishment was not seen by either the undersigned or Officer Malcolm. The lounge appeared to be under the control of the manager, Mr. Steven Silver.

When the undersigned and Officer Malcolm entered the lounge a female dancer, name unknown, was dancing on the stage to music from a juke box. [T]his dancer was nude from the waist up and was wearing a black bikini type bottom which covered the genital area but left the buttocks exposed.

This dancer did, at times, reveal the genital area by dropping the bottom portion of her bikini type panties. Tips (Gratuities) were given to the dancer by male patrons. The male patron would summon the dancer by holding up a what appeared to be a One Dollar bill. The dancer would go over to the patron either sit in front of the patron or kneel in front of the patron and allow the patron to place the bill into the crotch area of the bikini bottom. The placement of the bill is done in a sensuous manner. [T]he bill is slowly introduced into the crotch area with the panties pulled away from the dancer's body which completely reveals the genital area. This particular way of accepting tips is embellished by the patron kissing the dancer's mouth. This practice was witnessed on numerous occasions by the undersigned and Officer Malcolm.

The first dancer was apparently upset with the 'Tips' she was or was not receiving. She did remark, amongst other things, 'You guys suck.' She

A common-sense reading of the affidavits attests to probable cause to arrest the defendant for violation of § 53a-194 on December 19, 1979, the crime with which he was charged in the first count. From the representations concerning the defendant's presence and his status as permittee, the judicial authority could reasonably infer that the defendant had knowledge of, and was promoting, the performances which had taken place. See General Statutes § 53a-193 (e).[4] It is permissible to rely on circumstantial evidence of these elements to establish probable cause. *State* v. *Andrews*, 150 Conn. 92, 103, 186 A.2d 546 (1962); *State* v. *Sul*, 146 Conn. 78, 87, 147 A.2d 686 (1958). Finally, the detailed description of the performances sufficiently establishes probable cause that they were obscene as that term is defined in General Statutes § 53a-193 (a).[5]

We are unpersuaded by the defendant's arguments to the contrary. The standard of proof when the issue is probability is not illuminated by reference to cases such as *State* v. *Harrison*, 178 Conn. 689, 694–96, 425 A.2d 111 (1979), where the issue was proof at trial. Correct interpretation of the obscenity statute is not assisted by references to unrelated civil regulatory statutes such as that involved in *Mack* v. *Saars*, 150 Conn. 290, 304, 188 A.2d 863 (1963). The clear-cut affida-

---

did continue the dancing however.

The second female dancer began her act dancing in the same manner as the first (Juke box music). She, too, was nude from the waist up. This dancer, the second of the evening, accepted tips exactly the way the first dancer did. Her act lasted through approximately Six (6) record playings on the juke box.

The second dancer, like the first, was apparently distraught about the tipping. She remarked, dancing, 'Fuck you assholes.'

The undersigned and Officer Malcolm departed the Venus Lounge at approximately 8:59 P.M., on the 9th of January 1980.

This affidavit is true and correct to the best of my knowledge and belief.
                                        Signed /s/ Robert F. Kenary"

[4] See footnote 2, supra, for the full text of General Statutes § 53a-193 (e).

[5] See footnote 2, supra, for the full text of General Statutes § 53a-193 (a).

vits in this case cannot be faulted with being self-contradictory, as were those in *State* v. *Saidel,* 159 Conn. 96, 99, 267 A.2d 449 (1970). Finally, the issuance of the arrest warrant in this case does not violate the defendant's constitutional right of free speech. The formal attributes of the arrest warrant minimize its potential for intrusion into constitutionally protected domains. The warrant was supported by affidavits which contain a detailed description of repeated performances viewed by the affiant himself at designated times in a designated place. This warrant is thus a far cry from the general warrants for search and seizure of obscene materials, based on conclusory allegations, which were condemned in *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 325, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); and *Marcus* v. *Search Warrant,* 367 U.S. 717, 731–33, 81 S. Ct. 1708, 6 L. Ed. 2d 1127 (1961). As we have noted previously, because arrests are inherently less apt to be intrusive than are searches, there is a difference in the constitutional standards by which probable cause to arrest and probable cause to search are measured. The probable cause determination in the context of arrest warrants requires inquiries that are less complex constitutionally than are those that pertain to search warrants. *State* v. *DeChamplain,* 179 Conn. 522, 530, 427 A.2d 1338 (1980); 1 LaFave, Search and Seizure (1978) § 3.1 (b). The warrant was properly issued.

B

The defendant next claims that the trial court erred in failing to grant his motions for judgment of acquittal on count one. In this regard, the defendant no longer contests the sufficiency of the evidence at trial to prove that the performances at the Venus Lounge were obscene. On this appeal, he argues that there was insufficient evidence to establish beyond a reasonable

doubt either his knowledge of the content and character of the performances, or of his promotion thereof. We find no error.

The standard by which we review motions for acquittal is not in doubt. " 'When a verdict is challenged because of insufficient evidence, the issue is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Ruiz,* 171 Conn. 264, 276–77, 368 A.2d 222 (1976); *State* v. *Benton,* 161 Conn. 404, 407, 288 A.2d 411 (1971). It is the province of the jury to draw reasonable and logical inferences from the facts proved. *State* v. *Williams,* 169 Conn. 322, 336, 363 A.2d 72 (1975). There is no distinction between direct and circumstantial evidence so far as probative force is concerned; *State* v. *Cari,* 163 Conn. 174, 179, 303 A.2d 7 (1972); and the evidence must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Brown,* 169 Conn. 692, 695, 364 A.2d 186 (1975).' *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); see *State* v. *Ferrell,* 191 Conn. 37, 46, 463 A.2d 573 (1983). We do not sit as [an additional] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. See *State* v. *Martin,* 189 Conn. 1, 9, 454 A.2d 256 (1983); *Kaplan* v. *Kaplan,* [186 Conn. 387, 391, 441 A.2d 629 (1982)]; *State* v. *Festo,* 181 Conn. 254, 260–61, 435 A.2d 38 (1980)." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

The evidence adduced at trial with respect to the defendant's knowledge of the content and character of the performance focused on his presence at the

Venus Lounge during the obscene performances. The performances took place on an elevated stage at one end of a large room at a time when the defendant was seen sitting at the bar at the other side of the room. From where he was seated, the defendant could clearly see the stage, which was only fifteen feet away. Despite the fact that there was no direct evidence that the defendant was seen looking in the direction of the stage, the jury could reasonably and logically have inferred his knowledge. *State* v. *Andrews,* 150 Conn. 92, 103, 186 A.2d 546 (1962); *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686 (1958). There was no persuasive evidence that the performances represented aberrant isolated departures from previously established innocuous routines. The evidence clearly sufficed on this element of the crime with which the defendant was charged.

The evidence similarly sufficed to permit the jury to find that the defendant had promoted the performances. In its bill of particulars, the state alleged that the defendant had "provided, presented, exhibited, advertised, produced, directed, [and] participated in" the performances. The state's evidence at trial showed that the defendant was the co-owner and permittee of the Venus Lounge. The defendant, through his manager, hired the performers. The defendant's manager testified that, in the main, it was his job to watch the cash register rather than to mind the show. Although the defendant had posted rules forbidding some aspects of the obscene performances, and although, on occasion, the defendant or his manager had stopped the show when the performers were violating the rules, there was evidence from which the jury could have inferred that these control measures were not seriously or regularly enforced by the defendant. Taken together with the evidence relating to the defendant's knowledge, this evidence met the requirements of our statute. See *People* v. *Better,* 33 Ill. App. 3d 58, 67, 337 N.E.2d 272

(1975); *Seattle* v. *Marshall,* 83 Wash. 2d 665, 672, 521 P.2d 693, cert. denied, 419 U.S. 1023, 95 S. Ct. 499, 42 L. Ed. 2d 297 (1974).

## C

The defendant's final claim of error relates to the admission, at his trial, of the testimony of Charles H. Holland, supervisor of the inspectors of the liquor control commission of the state of Connecticut. Holland testified that regulations of the liquor control commission which defined the status of a permittee made the defendant strictly accountable for the activities at the Venus Lounge. The Appellate Session agreed with the defendant that the testimony was improper as to its manner and form. Although the trial court would have been entitled to take judicial notice of the regulations of the liquor commission, it was improper to permit the witness to offer his expert interpretation of the regulations when that testimony was, in effect, the statement of a legal opinion about the guilt of the defendant. *State* v. *Heinz,* 38 Conn. Sup. 570, 577–78, 455 A.2d 346 (1982). On this appeal, the defendant argues that the Appellate Session did not go far enough in limiting the use of the liquor regulations upon retrial.

When this claim of error was presented to the Appellate Session, the defendant conceded, as he had at the trial, that the trial court was entitled to take judicial notice of the liquor control commission regulations. See *State* v. *Vachon,* 140 Conn. 478, 483–84, 101 A.2d 509 (1953); *Roden* v. *Connecticut Co.,* 113 Conn. 408, 416, 155 A. 721 (1931); Tait & LaPlante, Handbook of Connecticut Evidence § 6.3a (2) (1976). On this state of the record, the defendant cannot now be heard to say that the Appellate Session erred in concluding that the regulations, upon a new trial, might be relevant and admissible as probative of the defendant's control over the premises, if evidentiary use of the regulations is

properly limited. As the Appellate Session correctly held, testimony which purports to use the regulations as a basis for an expert opinion holding the defendant strictly accountable constitutes a misuse of the regulations, because it invades the defendant's right to have a jury determine his guilt or innocence. See *Mullaney* v. *Wilbur,* 421 U.S. 684, 698, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Reid,* 154 Conn. 37, 40–41, 221 A.2d 258 (1966); *Beckanstin* v. *Liquor Control Commission,* 140 Conn. 185, 190–91, 99 A.2d 119 (1953). There was no error in the Appellate Session's rulings on this point.

In summary, we reject each and every claim of error raised by the defendant on his appeal to this court on count one of the information. In accordance with the judgment of the Appellate Session, he is, however, entitled to a new trial on this count.

## II

The state has appealed from that part of the judgment of the Appellate Session which, having found no probable cause to arrest the defendant on counts three and four of the information, relied upon *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965), to dismiss those charges against him.[6] The state again concedes the

[6] The state has not appealed the dismissal of the charge contained in count two of the information. The information, in counts one and two, charged the defendant with two separate counts based upon the two separate dance routines observed by the police officers on December 19, 1979. Counts three and four similarly related to the two performances observed on January 9, 1980. The Appellate Session concluded that all of the events that transpired on December 19, 1979, were part of a single performance. On this basis, the court held that the defendant's separate convictions on counts one and two violated the prohibition against multiple punishments for the same offense that is implicit in the double jeopardy clause of the fifth amendment to the United States constitution. *State* v. *Heinz,* 38 Conn. Sup. 570, 575–76, 455 A.2d 346 (1982). Because the court dismissed counts three and four for lack of probable cause to arrest, it did not reach the issue of whether there was also a multiplicity of claims with respect to counts three and four.

absence of probable cause. The thrust of its appeal is to urge us to reconsider and to overrule *Licari's* holding that a defective arrest warrant requires a court to dismiss the information for lack of jurisdiction over the defendant's person. Absent *Licari,* the state argues, the defendant's conviction on counts three and four should be reinstated. We agree with the state that the Appellate Session erred in its judgment with respect to counts three and four, but for a somewhat different reason.

The present case does not require us to overrule *Licari,* although it does serve to illustrate the fragility of its jurisdictional underpinnings. Under federal law, the fact that a person has been illegally arrested or detained will not void a subsequent conviction. *United States* v. *Crews,* 445 U.S. 463, 474, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); *Gerstein* v. *Pugh,* 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); *State* v. *Gallagher,* 191 Conn. 433, 438, 465 A.2d 323 (1983); *State* v. *Haskins,* 188 Conn. 432, 442, 450 A.2d 828 (1982); see Borden & Jaffe, "The Trouble with *Licari:* Irony and Anomaly," 55 Conn. B.J. 463, 465–69 (1981). Under state law, whatever might be required by the state constitution in other circumstances; see, e.g., *State* v. *Federici,* 179 Conn. 46, 61–62, 425 A.2d 916 (1979); this defendant has no jurisdictional defense to his prosecution under counts three and four of the information against him. That conclusion follows inescapably from our holding, in part I of this opinion, that there was probable cause to arrest the defendant on count one of the information. Had the state elected in the first instance to charge the defendant with only this one count, the state might subsequently have amended the information to add counts two, three and four. See

Practice Book § 623.[7] The defendant might have objected to such an amendment, but not on jurisdictional grounds. The defendant would thereafter have been entitled to seek dismissal of the charges on counts three and four because of insufficiency of the evidence to justify the continuing of the information against him; Practice Book § 815 (5);[8] but, again, not on jurisdictional grounds. It would be elevating form over substance to erect a jurisdictional barrier to the state's prosecution because the state proceeded with one piece of paper rather than with two. We decline to extend *Licari* to a case such as this one, where an arrest warrant properly establishes probable cause for some of the counts of the information under which the defendant is charged.

The Appellate Session was therefore in error in concluding that, in the absence of probable cause, the charges in counts three and four had to be dismissed. We also disagree, however, with that court's conclusion that there was insufficient probable cause.

The Appellate Session's holding on probable cause focused on the defendant's absence from the premises on January 9, 1980, to conclude that the affidavits did

---

[7] "[Practice Book] Sec. 623. —— ——SUBSTANTIVE AMENDMENT BEFORE TRIAL

"If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced."

[8] Practice Book § 815 (5) provides as follows:

"Sec. 815. ——MATTERS TO BE RAISED

"The following, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information: . . . (5) Defenses or objections based on the insufficiency of evidence or cause to justify the bringing or continuing of such information or indictment or the placing of the defendant on trial . . . ."

not give rise to a reasonable inference that the defendant had knowledge that the content and the character of the performances at the Venus Lounge on this occasion were obscene. We believe that this conclusion fails to take into account the fact that the performances on that date were essentially similar to the performances which took place three weeks earlier, when he was present. Read in conjunction with each other, Officer Kenary's two affidavits established probable cause to arrest the defendant for knowingly promoting obscene performances on both dates.

On the state's appeal, therefore, the judgment of the Appellate Session with regard to counts three and four must be set aside. That court did not have the occasion to resolve other claims of error that the defendant raised when he appealed his conviction on these two counts. The case must therefore be remanded to the Appellate Court[9] for further consideration on these unresolved claims.

There is no error in the defendant's appeal to this court; there is error in the state's appeal to this court; on counts three and four, the judgment is set aside and the case is remanded for further proceedings in the Appellate Court in accordance with this opinion.

In this opinion the other judges concurred.

---

[9] Appeals formerly filed in the Appellate Session of the Superior Court have been transferred to the Appellate Court by Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3; General Statutes § 51-197a.