STATE OF CONNECTICUT *v.* KENDRICK WILKES
(12513)

LANDAU, SPEAR and FREEDMAN, Js.

Argued January 6—decision released April 11, 1995

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard Palombo, Jr.,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of three counts of sale of narcotics and one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b),[1] and one count of conspiracy to

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one

violate the dependency producing drug law in violation of General Statutes §§ 53a-48[2] and 21a-278 (b). The defendant claims that the trial court violated his state and federal due process rights to a fair trial when it sustained a fifth amendment claim of privilege,[3] made by counsel on behalf of a witness, without finding that the witness desired to assert his personal privilege or that his answers would create a real, substantial risk of incrimination or future prosecution after the witness had answered related questions on direct examination. The state argues that although a person who wants to claim his fifth amendment privilege generally must invoke it himself, any technical violation attendant to the invocation of the privilege in this case was harmless.

The jury reasonably could have found the following facts. On the evening of February 6, 1992, Detectives Carl Bergquist and Ada Kuret were conducting a narcotics surveillance in the area of Seaview Avenue and Huron Street in Bridgeport. On three occasions, a different individual approached Jeffrey Braziel, who was standing in front of a house on Huron Street.

kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes § 53a-48 (a) provides in pertinent part: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] The fifth amendment to the United States constitution provides in pertinent part: "No person shall . . . be compelled in any criminal case to be a witness against himself . . . ."

Braziel escorted each individual to an area behind the house and exchanged vials of crack cocaine for cash. During these exchanges, the defendant was standing at the corner of Seaview Avenue and Huron Street. Conversations and hand gestures between the defendant and Braziel led the detectives to conclude that the defendant was directing people to where Braziel was positioned. At about 9:30 p.m., Braziel approached the defendant and handed him some cash. When police vehicles appeared on the scene, the defendant ran into a house. He later came out and fled down the street. The police apprehended the defendant and found $249 in his possession. Braziel, who was also arrested, was found to be carrying $50.

At trial, Braziel testified against the defendant. He admitted that he had previously sold drugs for the defendant and that he had met him on February 6, 1992, for that purpose. On that day, the defendant gave Braziel a package containing sixty vials of crack to be sold for $5 each. Upon selling all the vials, Braziel kept $50 and gave $250 to the defendant. Although no one approached the defendant directly, if a potential buyer did not know where to go, the defendant would signal Braziel.

At the time of his testimony, Braziel had pleaded guilty to five drug related charges and was awaiting sentencing. He previously had been convicted of several felonies and was willing to come forward and testify against the defendant when he found out that he could benefit from it. During the cross-examination of Braziel, the following colloquy occurred:[4]

"Q. For how many years have you been selling drugs?

"A. I don't know.

---

[4] Richard Palombo, Jr., assistant state's attorney, represented the state of Connecticut and Carol Goldberg, assistant public defender, represented Braziel.

"Q. Long time?

"A. Well, around '88 or '89. Something like that.

"Q. And when you were selling drugs back in '88 or '89, where were you selling them? Same location?

"A. No.

"Attorney Palombo: I'm going to object again on his behalf. He hasn't been offered any type of immunity and I don't know if he has a—to take the privilege as far as any acts he may have committed which he may testify to.

"Attorney Goldberg: I'd be happy to talk to him. I would object to answering those, also.

"The Court: You are objecting, claiming the privilege?

"Attorney Goldberg: Yes, Your Honor.

"The Court: Sustained."

Later in the cross-examination, while the defense was questioning Braziel about the circumstances surrounding his initial contact with the defendant, the following transpired:

"Q. Had this person brought you to some other locations for the same purpose [to sell drugs]?

"Attorney Goldberg: Objection, Your Honor.

"The Court: Sustained.

"Defense Counsel: May I have an exception, please, Your Honor?

"The Court: The objections that come from Miss Goldberg are obviously a claim that he is exercising his fifth amendment right.

"Defense Counsel: Yes, Your Honor."

Both the United States and Connecticut constitutions ensure that "[a]ll persons enjoy a constitutional right of immunity from being compelled to testify against themselves. U.S. Const., amend. V; Conn. Const., art. I, § 8. That right is a personal one. *State* v. *Horwitz*, 108 Conn. 53, 58, 142 A. 470 (1928). The privilege against self-incrimination may not be invoked on behalf of another. *Couch* v. *United States*, 409 U.S. 322, 327–29, 93 S. Ct. 611, 34 L. Ed. 2d 548 (1973). While the personal nature of this privilege does not prohibit an attorney from claiming it on behalf of a client who is being interrogated in a civil matter, pursuant to General Statutes § 52-199 (b),[5] no such statutory provision permits an attorney to claim the privilege on behalf of a client in a criminal matter. A witness must affirmatively claim this privilege against self-incrimination when taking the stand to testify. *State* v. *Smith*, 201 Conn. 659, 664, 519 A.2d 26 (1986). The fifth amendment privilege is not self-executing and must be asserted in a timely fashion. Id. A person who fails to claim the protection of the privilege will not be considered to have been compelled to testify within the meaning of the fifth amendment. *United States* v. *Mania*, 317 U.S. 424, 427, 63 S. Ct. 409, 87 L. Ed. 2d 376 (1943)." *State* v. *Cecarelli*, 32 Conn. App. 811, 818, 631 A.2d 862 (1993). Here, because Braziel did not personally invoke his privilege against self-incrimination, a hearing was necessary to determine if he intended to do so.

A hearing was also required in this case for the trial court to determine whether Braziel's claim of privilege against self-incrimination should be sustained. For the court to sustain the claim, " 'it need only be evident from the implications of the question, in the context in which it is asked, that a responsive answer to the

---

[5] General Statutes § 52-199 (b) provides: "The right to refuse to answer a question, produce a document or disclose a title may be claimed by the party interrogated or by counsel in his behalf."

question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *State* v. *Simms*, [170 Conn. 206, 209, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976)], citing *Hoffman* v. *United States*, [341 U.S. 479, 486–87, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)].' *State* v. *Erhardt*, 17 Conn. App. 359, 364, 553 A.2d 188 (1989). . . . The privilege against self-incrimination depends on the mere possibility of prosecution. *State* v. *Williams*, 200 Conn. 310, 319, 511 A.2d 1000 (1986)." (Citation omitted.) *State* v. *Cecarelli*, supra, 32 Conn. App. 819.

The defendant testified on his own behalf. He maintained that he did not supply Braziel with drugs and that he did not use drugs. He testified that he was on the corner of Seaview Avenue and Huron Street on the evening of February 6, 1992, for the purpose of buying a used car. Consequently, he did not have any occasion to enter into any conversations with Braziel and did not direct anyone to Braziel for the purpose of buying drugs. He further asserted that he first met Braziel in the lockup after having been arrested and did not recall having seen Braziel before that time.

Braziel testified on direct examination about "someone" who drove him to the corner of Seaview Avenue and Huron Street to meet the defendant and to sell drugs. He stated that he knew he was going there to sell drugs for the defendant because "the guy told me to go to Mr. Wilkes" and because "this is not my first time doing this . . . . It's not my first day selling—selling cracks." He indicated that he had previously sold drugs for the defendant and described his participation in drug transactions.

The crucial evidence necessary to obtain the defendant's convictions was supplied by Braziel, who was the state's key witness. The two areas of inquiry to which

the state and Braziel's attorney asserted the fifth amendment privilege were relevant to Braziel's reliability and credibility. The defendant thus had a right to have the trial court conduct a hearing so as to resolve the tension created by the claim of privilege and the right of confrontation. Braziel never personally invoked his fifth amendment privilege. Moreover, the transcript is devoid of any evidence that Braziel faced an enhanced risk of prosecution as a result of his answers to the questions posed on cross-examination. In not conducting a hearing, the trial court failed to determine whether Braziel personally intended to invoke his fifth amendment privilege and, if so, whether his claim was valid.

In *State* v. *Cecarelli*, supra, 32 Conn. App. 811, the colloquy in which the witness, through his attorney, invoked his fifth amendment privilege occurred outside the presence of the jury. In that case, we directed the trial court to hold a hearing to determine whether the witness intended to invoke his privilege and, if so, whether the claim should be sustained.[6] Id., 822. In this case, Braziel's privilege was improperly claimed and sustained in front of the jury. It is well settled that "[n]either [the state nor the defendant] has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him. . . . The rule is grounded . . . in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations." (Citations omitted; internal quotation marks omitted.) *State* v. *Dennison*, 220 Conn. 652, 660, 600 A.2d 1343 (1991). Because we

[6] In the event that the *Cecarelli* witness did not invoke his privilege or if he improperly invoked it, we further directed that Cecarelli's convictions be reversed and a new trial conducted. *State* v. *Cecarelli*, supra, 32 Conn. App. 822.

cannot say that the improper invocation of Braziel's privilege in the presence of the jury did not undermine the fairness of the defendant's trial, we must remand the case for a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.