STATE OF CONNECTICUT *v.* KENDRICK WILKES
(15278)

Peters, C. J., and Callahan, Berdon, Norcott and Palmer, Js.

Argued January 9—decision released March 5, 1996

*Susann E. Gill*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Richard F. Jacobson*, assistant state's attorney, for the appellant (state).

*Susan M. Hankins*, assistant public defender, for the appellee (defendant).

PETERS, C. J. The sole issue in this certified appeal is whether, under the circumstances of this case, the Appellate Court properly concluded that the improper invocation of the fifth amendment privilege against self-incrimination on behalf of a witness for the prosecution

was harmful error requiring a new trial. After a jury trial, the defendant, Kendrick Wilkes, was convicted of three counts of sale of narcotics and one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b),[1] and one count of conspiracy to violate the dependency producing drug law in violation of General Statutes §§ 53a-48[2] and 21a-278 (b). The trial court rendered judgment on the jury verdict and the defendant appealed to the Appellate Court, which reversed his conviction. *State* v. *Wilkes*, 37 Conn. App. 456, 656 A.2d 1061 (1995). We granted the state's petition for certification to appeal from the judgment of the Appellate Court, limited to the question of whether the defendant was harmed by the improper invocation of a witness' fifth amendment privilege.[3] We reverse the judgment of the Appellate Court.

---

[1] General Statutes § 21a-278 provides in relevant part: "Penalty for illegal manufacture, distribution, sale, prescription or administration by non-drug-dependent person. . . .

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes § 53a-48 provides in relevant part: "Conspiracy. Renunciation. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial

The opinion of the Appellate Court sets forth the relevant facts. "On the evening of February 6, 1992, Detectives Carl Bergquist and Ada Kuret were conducting a narcotics surveillance in the area of Seaview Avenue and Huron Street in Bridgeport. On three occasions, a different individual approached Jeffrey Braziel, who was standing in front of a house on Huron Street. Braziel escorted each individual to an area behind the house and exchanged vials of crack cocaine for cash. During these exchanges, the defendant was standing at the corner of Seaview Avenue and Huron Street. Conversations and hand gestures between the defendant and Braziel led the detectives to conclude that the defendant was directing people to where Braziel was positioned. At about 9:30 p.m., Braziel approached the defendant

---

court's improper failure to hold a hearing regarding the witness' purported claim of the fifth amendment privilege against self-incrimination was not harmless?" *State* v. *Wilkes*, 234 Conn. 901, 660 A.2d 858 (1995).

We also granted the defendant's motion for permission to raise the following alternate grounds on which to affirm the decision of the Appellate Court:

"1. Whether the [trial] court's ruling denied the defendant his constitutional right to cross-examine and confront [Jeffrey] Braziel, an alleged accomplice, admitted participant and the principal witness for the prosecution, after Braziel testified on direct examination?

"2. Whether the trial court abused its discretion in permitting the prosecutor or counsel for the prosecution's witness to invoke the witness' fifth amendment right against self-incrimination?

"3. Whether by testifying voluntarily on direct examination, the witness abandoned his right to assert a fifth amendment privilege against self-incrimination to cross-examination on his testimony?

"4. Whether the trial court erred in failing to hold an evidentiary hearing on the validity of Braziel's privilege against self-incrimination?"

Because we agree, for the reasons stated in the decision of the Appellate Court; *State* v. *Wilkes*, supra, 37 Conn. App. 461–62; that the invocation of the witness' fifth amendment privilege in this case was improper, and we only address whether the error was harmless, we need not address the defendant's second and fourth alternate grounds on which to affirm the decision of the Appellate Court. We fully address the defendant's first alternate ground. See part I of this opinion. Finally, we decline to address the third alternate ground because it is unnecessary for us to do so. See *Lees* v. *Middlesex Ins. Co.*, 229 Conn. 842, 847 n.4, 643 A.2d 1282 (1994); *Mead* v. *Burns*, 199 Conn. 651, 657 n.5, 509 A.2d 11 (1986).

and handed him some cash. When police vehicles appeared on the scene, the defendant ran into a house. He later came out and fled down the street. The police apprehended the defendant and found $249 in his possession. Braziel, who was also arrested, was found to be carrying $50.

"At trial, Braziel testified against the defendant. He admitted that he had previously sold drugs for the defendant and that he had met him on February 6, 1992, for that purpose. On that day, the defendant gave Braziel a package containing sixty vials of crack to be sold for $5 each. Upon selling all the vials, Braziel kept $50 and gave $250 to the defendant. Although no one approached the defendant directly, if a potential buyer did not know where to go, the defendant would signal Braziel.

"At the time of his testimony, Braziel had pleaded guilty to five drug related charges and was awaiting sentencing. He previously had been convicted of several felonies and was willing to come forward and testify against the defendant when he found out that he could benefit from it. During the cross-examination of Braziel, the following colloquy occurred:[4]

" '[Defense Counsel:] For how many years have you been selling drugs?

" 'A. I don't know.

" 'Q. Long time?

" 'A. Well, around '88 or '89. Something like that.

" 'Q. And when you were selling drugs back in '88 or '89, where were you selling them? Same location?

" 'A. No.

---

[4] "Richard Palombo, Jr., assistant state's attorney, represented the state of Connecticut and Carol Goldberg, assistant public defender, represented Braziel." *State* v. *Wilkes*, supra, 37 Conn. App. 459 n.4.

" 'Attorney Palombo: I'm going to object again on his behalf.[5] He hasn't been offered any type of immunity and I don't know if he has a—to take the privilege as far as any acts he may have committed which he may testify to.

" 'Attorney Goldberg: I'd be happy to talk to him. I would object to answering those, also.

" 'The Court: You are objecting, claiming the privilege?

" 'Attorney Goldberg: Yes, Your Honor.

" 'The Court: Sustained.'

"Later in the cross-examination, while the defense was questioning Braziel about the circumstances surrounding his initial contact with the defendant, the following transpired:

" 'Q. Had this person brought you to some other locations for the same purpose [to sell drugs]?

" 'Attorney Goldberg: Objection, Your Honor.

" 'The Court: Sustained.

" 'Defense Counsel: May I have an exception, please, Your Honor?

"'The Court: The objections that come from Miss Goldberg are obviously a claim that he is exercising his fifth amendment right.

" 'Defense Counsel: Yes, Your Honor.' " Id., 458–60.

The Appellate Court held that the trial court improperly had failed to conduct, outside the presence of the jury, a hearing to determine whether Braziel personally had intended to invoke his privilege against self-incrimi-

---

[5] Although Palombo previously objected to questions posed to Braziel by defense counsel, he had not objected on the ground of Braziel's fifth amendment privilege.

nation under the fifth amendment to the United States constitution[6] and, if so, whether the claim of privilege was valid. Id., 461. The Appellate Court then determined that "[t]he crucial evidence necessary to obtain the defendant's convictions was supplied by Braziel, who was the state's key witness." Id., 462. The Appellate Court further determined that the two questions to which the fifth amendment privilege had been invoked on Braziel's behalf were relevant to his reliability and credibility. Id., 462–63. The Appellate Court concluded that "[b]ecause we cannot say that the improper invocation of Braziel's privilege in the presence of the jury did not undermine the fairness of the defendant's trial, we must remand the case for a new trial." Id., 463–64.

On appeal to this court, the state does not challenge the holding of the Appellate Court that the trial court improperly failed to conduct a hearing on the two occasions at which the fifth amendment privilege had been invoked on Braziel's behalf.[7] The state claims, however, that the judgment of the trial court should nonetheless be affirmed because any violation attendant to the improper invocation of the privilege was nonconstitutional in nature and any error resulting from the nonconstitutional violation was harmless. The defendant argues, to the contrary, that the Appellate Court properly concluded that the error that flowed from the improper invocation of the privilege was not harmless, principally because the improper invocation violated his constitutional right to confrontation. We agree with the state.

---

[6] The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be compelled in any criminal case to be a witness against himself . . . ." This provision applies to the states through the fourteenth amendment. *Malloy* v. *Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964).

[7] The state originally claimed, in its brief to this court, that the trial court had not committed error in failing to conduct a hearing in response to the invocation of the fifth amendment privilege on Braziel's behalf. At oral

## I

To assess whether the improper invocation of the fifth amendment privilege on Braziel's behalf was harmless, we must first determine whether the violation attendant to the improper invocation was constitutional in nature. The defendant claims that the improper invocation of the privilege violated his right to confrontation under the sixth amendment to the United States constitution[8] and article first, § 8, of the Connecticut constitution[9] because the invocation precluded him from pursuing a relevant area of inquiry regarding Braziel's reliability and credibility. We disagree.

It is axiomatic that a defendant is entitled to confront and to cross-examine fairly and fully the witnesses against him. U.S. Const., amends. VI and XIV; *Davis* v. *Alaska*, 415 U.S. 308, 315–16, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Chambers* v. *Mississippi*, 410 U.S. 284, 294–95, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State* v. *Hackett*, 182 Conn. 511, 517, 438 A.2d 726 (1980). It is equally axiomatic that the right to confrontation is not absolute. *Chambers* v. *Mississippi*, supra, 295; *State* v. *Pratt*, 235 Conn. 595, 604, 669 A.2d 562 (1995). "The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' moti-

---

argument, however, the state conceded that the trial court's failure to conduct such a hearing was improper.

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." This provision applies to the states through the fourteenth amendment. *Pointer* v. *Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[9] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

Because the defendant has failed to provide an independent analysis of his state constitutional claim, we decline to review it. See *State* v. *Williams*, 231 Conn. 235, 247 n.16, 645 A.2d 999 (1994).

vation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

We are persuaded that the invocation of the fifth amendment privilege on Braziel's behalf, although improper, did not violate the defendant's rights under the sixth amendment.[10] The privilege was asserted in response to only two questions asked by defense counsel during a lengthy and comprehensive cross-examination. Neither invocation of the privilege infringed upon the defendant's right to confrontation.

We need address only briefly the first question in response to which the privilege was invoked, namely, whether Braziel had sold narcotics on Huron Street prior to his arrest on February 6, 1992. Braziel answered this question. His answer was not stricken from the record, and the trial court never instructed the jury to disregard the answer. Accordingly, because Braziel's response to this question remained part of the record, the improper invocation of the privilege on this occasion did not deny the defendant his right to confrontation.

The invocation of the privilege in response to the second question, namely, whether the unnamed individ-

---

[10] Because Braziel "was the state's key witness"; *State* v. *Wilkes,* supra, 37 Conn. App. 462; any limitation on his cross-examination is subject to the most rigorous appellate review. *State* v. *Colton,* 227 Conn. 231, 250, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995); *State* v. *Gaynor,* 182 Conn. 501, 509 n.7, 438 A.2d 749 (1980).

ual who drove Braziel to Huron Street previously had driven him to other locations to sell narcotics, stands on a somewhat different footing. Although Braziel did not answer the question, his failure to do so did not, in our view, deny the defendant his right to confrontation. The record persuasively demonstrates that the trial court granted the defendant wide latitude on cross-examination of Braziel, both with respect to his recollection of the events of February 6, 1992, and with respect to his credibility and motivation for testifying against the defendant. Notably, the defendant elicited that Braziel had regularly used cocaine, had ingested cocaine while he had sold cocaine on February 6, 1992, and had sold narcotics since 1988 or 1989.[11] Furthermore, Braziel repeatedly admitted that he had decided to testify against the defendant in exchange for the opportunity to argue for a lesser sentence for charges to which he earlier had pleaded guilty.[12] Under these circumstances, the defendant had a sufficient opportunity to impeach Braziel's reliability and credibility. See *State* v. *Burak*, 201 Conn. 517, 527, 518 A.2d 639 (1986); *State* v. *Rucker*, 177 Conn. 370, 375, 418 A.2d 55 (1979).

Moreover, the invocation of the fifth amendment privilege on the second occasion did not, as the defendant contends, deny him the opportunity to pursue any particular line of inquiry with Braziel. A blanket privilege was not invoked on Braziel's behalf. See *State* v. *Cecarelli*, 32 Conn. App. 811, 817–21, 631 A.2d 862 (1993). Rather, the privilege was invoked effectively only once

---

[11] Braziel also testified on direct examination and again on cross-examination that he previously had been convicted of one count of robbery in the third degree, one count of possession of narcotics with intent to sell and two counts of failure to appear in the first degree.

[12] Braziel pleaded guilty to three counts of sale of narcotics and one count each of possession of narcotics with intent to sell and conspiracy to violate the dependency producing drug law. These charges stemmed from his activities on Huron Street on February 6, 1992. When Braziel pleaded guilty to these charges, he also pleaded guilty to an unrelated charge of escape.

during the entire cross-examination of Braziel. The area of inquiry to which the single precluded question related, namely, Braziel's relationship with the unnamed individual who drove him to Huron Street, was adequately explored through other questions. Defense counsel asked numerous questions that elicited testimony from Braziel, both before and subsequent to the precluded question, regarding his relationship with the unnamed individual.[13] Neither the state nor Braziel's

[13] Braziel testified to the following on cross-examination immediately preceding the invocation of the fifth amendment privilege by his counsel:

"[Defense Counsel:] Is it your testimony that [the defendant] was already at Seaview and Huron before you arrived?

"A. Yes.

"Q. And somebody told you to go to him—

"A. Yes.

"Q. —to buy crack. Who was that?

"A. This guy.

"Q. What guy?

"A. This guy. I don't know his name.

"Q. But you know him well enough to trust him—enough to trust him to walk up to the—this man allegedly on the corner and say—give me some crack, I want to sell it?

"A. Yes.

"Q. But you don't know his name?

"A. No.

"Q. Do you know where he lives?

"A. No.

"Q. Do you know what kind of car he drives?

"A. No.

"Q. What kind of car were you in that day?

"A. I don't know. I can't recall.

"Q. Where did he pick you up?

"A. From my house. . . .

"Q. Let me ask you a question. When you left your house, you knew you were going to Seaview and Huron to sell crack for somebody?

"A. Yes.

"Q. Right?

"A. When I got there, [the defendant] was there.

"Q. So the point is that whoever was there and whoever you were directed to, that is the person you were going to work for that day?

"A. Exactly.

"Q. And some guy in a car is the one that directed you?

"A. Yes.

counsel objected to these questions. Accordingly, the successful invocation of the privilege did not foreclose the defendant from an area of inquiry during cross-examination.

In light of this record, we conclude that the defendant's sixth amendment rights were not violated by the improper invocation, on two separate occasions, of the fifth amendment privilege on Braziel's behalf. The defendant was allowed sufficient cross-examination and impeachment of Braziel to satisfy his constitutional right to confrontation. In the absence of a violation of the defendant's constitutional rights, the improper invocation of the privilege constituted evidentiary rather than constitutional error. See *State* v. *Dennison*, 220 Conn. 652, 661, 600 A.2d 1343 (1991); *State* v. *Person*, 215 Conn. 653, 659–60, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991).

## II

As an evidentiary error, the improper invocation of the fifth amendment privilege against self-incrimination

"Q. And you trusted him, of course?

"A. Yes.

"Q. He must have trusted you, too?

"A. Yes.

"Q. But you don't know his name?

"A. No.

"Q. You don't know where he lives?

"A. No."

At this point, defense counsel asked Braziel the question to which Braziel's counsel asserted the fifth amendment privilege: "Had this person brought you to some other locations for the same purpose [to sell drugs]?" The trial court sustained the claim of privilege, and defense counsel continued:

"Q. The guy that gave you the ride, did he have anything to do with anything that happened that day?

"A. No.

"Q. He was just being a good samaritan for you because he knew you needed some cash?

"A. Yeah. . . .

"Q. So if your buddy drives you to the corner and says you sell for [the defendant], that is good enough for you?

"A. Yeah."

on Braziel's behalf does not automatically require reversal of the judgment against the defendant. See *State* v. *Dennison*, supra, 220 Conn. 661; *State* v. *Person*, supra, 215 Conn. 660; *State* v. *Burak*, supra, 201 Conn. 527. "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Citations omitted; internal quotation marks omitted.) *State* v. *Vilalastra*, 207 Conn. 35, 47, 540 A.2d 42 (1988); *State* v. *Dennison*, supra, 661; *State* v. *Person*, supra, 660. We are persuaded that the defendant has failed to meet his burden of establishing harmful error.

First, the inference that the jury would most likely have drawn from the invocation of the fifth amendment privilege on Braziel's behalf, namely, that Braziel had engaged in additional illicit acts, would have adversely affected Braziel's credibility and inured to the defendant's benefit rather than to his detriment. Cf. *State* v. *Dennison*, supra, 220 Conn. 662–63; *State* v. *Bryant*, 202 Conn. 676, 683–84, 523 A.2d 451 (1987). Second, in light of the ample impeachment evidence against Braziel that was admitted during direct examination and cross-examination, Braziel's failure to answer the single question precluded by the invocation of the privilege impaired neither the defendant's ability to attack nor the jury's assessment of his credibility. Moreover, without condoning the prosecutor's inappropriate and unwarranted intervention on behalf of Braziel, we cannot conclude that his single invocation of Braziel's fifth amendment privilege constituted such a deliberate and flagrant attempt to capitalize on the privilege as to constitute harmful error. Cf. *State* v. *Dennison*, supra, 663–64 (prosecutor's conscious and repeated use of defense witness' invocation of fifth amendment privilege harmful because prosecutor's conduct enticed jury to draw improper and prejudicial inference against defendant).

Finally, the preclusion of an answer to a single question, because of the improper invocation of the privilege on Braziel's behalf, cannot reasonably be regarded as having been central to the state's case. The state produced strong evidence of the defendant's guilt. Braziel testified that both he and the defendant had been engaged in the sale of narcotics on Huron Street on February 6, 1992. Detectives Bergquist and Kuret, who had conducted surveillance at Huron Street on that date and had observed both the defendant and Braziel, corroborated Braziel's version of events and connected the defendant to the crimes with which he had been charged.

In light of the circumstances of this case, we conclude that the improper invocation of the fifth amendment privilege against self-incrimination on Braziel's behalf was harmless. The defendant has entirely failed to establish, as is his burden, that the improper invocation may have affected the verdict against him. See *State* v. *Williams*, 231 Conn. 235, 250, 645 A.2d 999 (1994); *State* v. *Person*, supra, 215 Conn. 665. The Appellate Court, therefore, improperly ordered a new trial.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.