STATE OF CONNECTICUT *v.* JOHN CECARELLI
(10635)
(10636)

DUPONT, C. J., FOTI and SCHALLER, Js.

Argued June 11—decision released September 21, 1993

*Alexander H. Schwartz,* special public defender, for the appellant-appellee (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Maxine Wilensky,* assistant state's attorney, for the appellee-appellant (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of three counts of sale of cocaine by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and one count of possession of marijuana in violation of General Statutes § 21a-279 (c). He claims that the trial court improperly (1) failed to hold an evidentiary hearing before sustaining a witness informant's blanket invocation of the privilege against self-incrimination, as asserted through the witness' attorney, and (2) refused to strike the testimony of a state's witness despite the state's intentional destruction of the witness' prior statements. The state appeals challenging the trial court's decision to dismiss, after guilty verdicts, the defendant's conviction of possession of cocaine with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and possession of cocaine in violation of General Statutes § 21a-279 (a). The state claims that the trial court should have merged, rather than dismissed, the convictions.

The jury reasonably could have found the following facts. In May, 1990, David Ciarlelli, an undercover patrol officer assigned to the narcotics unit of the Hamden police department, began working with an informant, Anthony Gentile. Gentile, who had been arrested in North Haven on April 25, 1990, and had outstanding charges there, was a confidential informant for the North Haven police department, and was willing to cooperate with the Hamden police also. Gentile told Ciarlelli that the defendant, an acquaintance of Gen-

tile, was involved in selling drugs. Ciarlelli ran a record check at that time and found that the defendant had never been arrested.

Over the next few months, Ciarlelli met with Gentile several times. Ciarlelli also conducted periodic drive-by surveillance of the defendant's house in Hamden but did not notice any suspicious activity there. On August 10, 1990, Ciarlelli, acting undercover, drove with Gentile to a parking lot near a soccer field in North Haven, where they met the defendant. Gentile introduced Ciarlelli to the defendant as his friend, Dave. Ciarlelli then observed what he believed to be a controlled buy of cocaine from the defendant, conducted by Gentile for the North Haven police department.

On August 16, 1990, Gentile called the defendant from the North Haven police department and arranged a purchase of narcotics. Ciarlelli and Gentile drove together to the defendant's house. The defendant gave a plastic bag, which he had removed from his sock, to Gentile in exchange for money; Gentile later gave the bag to the North Haven police department. Ciarlelli then told the defendant he wanted to purchase a gram of cocaine. The defendant went into his house and returned with a plastic bag containing a white powder, which he then sold to Ciarlelli for $100 of Hamden police department funds. The powder purchased by Ciarlelli tested positive for cocaine.

On August 29, 1990, Ciarlelli telephoned the defendant from the Hamden police department to arrange a purchase of an "eight-ball," the equivalent of two grams of cocaine. The defendant agreed and told Ciarlelli to drive over to his house. Ciarlelli drove there alone. On this occasion, he wore a transmitter that enabled Hamden police officers to monitor and tape the conversation between him and the defendant. The defendant met Ciarlelli at the door and, in exchange

for $200 of department funds, sold him two plastic bags of a substance that later tested positive for cocaine. In response to Ciarlelli's query, the defendant gave the officer prices for various quantities of cocaine. Before leaving, Ciarlelli asked the defendant if he could purchase another eight-ball on August 31, 1990. The defendant agreed.

On August 31, 1990, Ciarlelli telephoned the defendant to inquire about the eight-ball he had ordered. The defendant said he had it and that Ciarlelli should come and get it. Ciarlelli, again wearing a transmitter that permitted monitoring and taping of the transaction, proceeded to the defendant's house. Upon Ciarlelli's arrival, the defendant went into the house and returned with a plastic bag containing a white powder that he sold to Ciarlelli for $200 of police department funds. This substance also tested positive for cocaine.

On September 7, 1990, officers from the Hamden police department and the statewide narcotics task force executed a search warrant at the defendant's house. A quantity of cocaine, two marijuana seedlings, drug paraphernalia, and several firearms were seized. The defendant was arrested outside of his house prior to the search.

Gentile was arrested by North Haven police on September 13, 1990, on unrelated felony charges.

I

THE DEFENDANT'S APPEAL

A

The defendant first claims that his state and federal constitutional due process rights to a fair trial and to establish a defense were violated by the trial court's failure to conduct a hearing on Gentile's intent, as rep-

resented by his attorney, to make a blanket invocation of his fifth amendment privilege against self-incrimination.

The defendant testified on his own behalf and presented the following evidence in support of his defense of entrapment. The defendant claimed that he met Gentile in 1981 but had not seen him for several years until 1990. In April or May, 1990, the defendant's fiancee, Roseann DeGolo, was attending drug rehabilitation meetings in North Haven; Gentile was also attending these meetings and he asked DeGolo to purchase drugs for him. Gentile telephoned DeGolo frequently to press this request. The defendant interceded on several occasions, demanding that Gentile stay away from DeGolo. On two or three occasions, however, the defendant purchased drugs and sold them to Gentile, in an effort to keep him from bothering DeGolo. The defendant stopped selling drugs to Gentile after DeGolo stopped attending the meetings.

According to the defendant, Gentile persisted in contacting him between May and July, 1990, calling his house as many as seven times a week to ask him to buy drugs. The defendant claimed that during this time he withstood Gentile's demands. On August 1, 1990, however, the defendant met with Gentile in North Haven. Gentile proposed a plan whereby he would obtain drugs from an East Haven dealer, sell them to the defendant, and then buy them back. Gentile said that his friend, Dave, would also buy drugs. The defendant agreed to the proposal. Thereafter, he bought cocaine from Gentile and sold half of it back to him on August 10, 1990, when he and Gentile met at a soccer field in North Haven. Ciarlelli was present at that time. The defendant alleged that Gentile bought the remaining cocaine from him around August 12, 1990. The defendant claimed that he again purchased cocaine

from Gentile prior to August 16, 1990, the date on which he sold cocaine to both Ciarlelli and Gentile.

The defendant testified that he purchased cocaine again from Gentile some time between August 16 and August 29, 1990; he claimed that he sold part of this cocaine to Ciarlelli on August 29 and the remainder to Gentile some time before that date.

The defendant testified that early in the morning on August 31, 1990, the defendant met Gentile in New Haven and sold cocaine to him. At that time, Gentile allegedly gave him a paper bag containing drug paraphernalia that was seized from the defendant's house on September 7, 1990. Finally, the defendant claimed that he purchased more cocaine from Gentile on September 6, 1990, which he intended to sell to Ciarlelli. This cocaine, he claimed, was seized from his house on September 7, 1990.

The defendant's testimony indicated that Gentile was buying, selling and using cocaine during the time he was working with Ciarlelli as a police informant. He also presented a witness who corroborated his testimony that a transaction between him and Gentile occurred prior to the August 16, 1990 sale of cocaine to Gentile and Ciarlelli.

To support his claim that Gentile had induced him to take part in illegal activity, the defendant attempted to call Gentile as an adverse witness. Both the defendant and the state had issued a writ of habeas corpus ad testificandum for Gentile, and he was in the courthouse on April 29, 1991. Gentile did not appear before the trial court; his counsel, John Keefe, appeared on his behalf. Outside the jury's presence, the trial court asked Keefe whether, if a hearing was held to test the limits of the fifth amendment privilege, Gentile would invoke the privilege regardless of the question he was asked. Keefe said yes. The defendant objected, saying

that a hearing with Gentile present was "absolutely essential" to determine if Gentile would invoke the privilege and to assess whether the invocation was proper. The trial court determined, however, that since Gentile's attorney had said his client would invoke the fifth amendment privilege no matter what questions he was asked, there was no point in holding a hearing. The defendant promptly took an exception to the court's ruling. He unsuccessfully renewed this claim at a hearing on his posttrial motions for judgment of acquittal and a new trial. We conclude that the hearing was essential.

All persons enjoy a constitutional right of immunity from being compelled to testify against themselves. U.S. Const., amend. V; Conn. Const., art. I, § 8. That right is a personal one. *State* v. *Horwitz,* 108 Conn. 53, 58, 142 A. 470 (1928). The privilege against self-incrimination may not be invoked on behalf of another. *Couch* v. *United States,* 409 U.S. 322, 327–29, 93 S. Ct. 611, 34 L. Ed. 2d 548 (1973). While the personal nature of this privilege does not prohibit an attorney from claiming it on behalf of a client who is being interrogated in a civil matter, pursuant to General Statutes § 52-199 (b), no such statutory provision permits an attorney to claim the privilege on behalf of a client in a criminal matter. A witness must affirmatively claim this privilege against self-incrimination when taking the stand to testify. *State* v. *Smith,* 201 Conn. 659, 664, 519 A.2d 26 (1986). The fifth amendment privilege is not self-executing and must be asserted in a timely fashion. Id. A person who fails to claim the protection of the privilege will not be considered to have been compelled to testify within the meaning of the fifth amendment. *United States* v. *Mania,* 317 U.S. 424, 427, 63 S. Ct. 409, 87 L. Ed. 2d 376 (1943). In the present case, Gentile did not personally invoke his privilege against

self-incrimination. A hearing was necessary to determine if he would do so.

A hearing was also required, particularly in the circumstances of this case, for the trial court to determine whether Gentile's claim of privilege against self-incrimination should be sustained. To sustain the privilege, "it need only be evident from the implications of the question, in the context in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *State* v. *Simms,* [170 Conn. 206, 209, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976)], citing *Hoffman* v. *United States,* [341 U.S. 479, 486–87, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)]." *State* v. *Erhardt,* 17 Conn. App. 359, 364, 553 A.2d 188 (1989). Conversely, before refusing to allow the privilege, the trial court must find that the answers to any questions proposed cannot possibly have a tendency to incriminate. Id., 363–64. The privilege against self-incrimination depends on the mere possibility of prosecution. *State* v. *Williams,* 200 Conn. 310, 319, 511 A.2d 1000 (1986).

Both the state and the defendant evidently felt that Gentile was a necessary witness in this case. Both had sought his presence at trial. The defendant's entrapment defense may have caused Gentile to be concerned that his answers to questions pertaining to his possession of drugs or supplying them to the defendant might expose him to criminal liability. While this concern might seem to be well-founded, the court had no opportunity to make a determination of such exposure. The defendant argues that there may have been other areas of inquiry available to him that would not be subject to a valid fifth amendment claim by Gentile and that would corroborate the defendant's claim of entrapment. It was the duty of the judge, not the witness or his counsel, to determine whether the witness could properly

assert the privilege against self-incrimination. *State* v. *Bryant,* 202 Conn. 676, 684 n.7, 523 A.2d 451 (1987), citing *Hoffman* v. *United States,* supra, 486.

In not conducting a hearing, the trial court here failed to establish, through specific questions posed, the validity of Gentile's claimed privilege. In upholding the claim of a blanket fifth amendment privilege, the court delegated to Gentile's attorney its own responsibility to determine if and when Gentile would respond to specific questions, and whether his invocation of the privilege was valid. The defendant claims that he was denied the opportunity to inquire as to whether any charges were pending against Gentile at the time of the alleged entrapment, whether Gentile had been promised anything for his cooperation as an informant for two police departments, or what motivated him to approach the defendant. In general, it was for the court to determine, through a voir dire examination of the witness, outside the jury's presence, whether a valid privilege was properly claimed as to questions dealing with the scope and extent of Gentile's actions as a police informant. The court, however, never determined whether this was a nonprivileged area of inquiry. It had previously determined that questions concerning Gentile's September 13, 1990 charges were not a legitimate area of inquiry.

While a question-by-question invocation of the privilege against self-incrimination may not be required under all circumstances, we cannot accept the state's contention that the sustaining of a blanket privilege claim was appropriate here in view of the proffer made by the defendant. That proffer, which the state argues "provided the trial court with sufficient information to evaluate the blanket assertion of the privilege without engaging in impermissible speculation," was made after the defendant had been convicted, at a hearing on the defendant's posttrial motions.

We cannot speculate that the defendant's entrapment defense may be inextricably bound up with a scheme of criminality on the part of Gentile and that all questions asked of Gentile to corroborate that defense might require answers tending to incriminate him. That determination may be reached only at a hearing for that purpose, which would allow the trial court to explore the basis, if any, of the witness' refusal to testify, if he does, in fact, invoke his privilege.

The defendant asks that we remand this matter for a new trial. He argues that, even if, after a proper hearing, the trial court determines that Gentile has properly invoked his fifth amendment privilege against self-incrimination, that invocation must also be made before the jury. The defendant argues that not doing so may tend to bolster the state's case, and that Gentile's invocation of his privilege before the jury would corroborate, to some degree, the defense of entrapment. We disagree that it is necessary for the jury to see Gentile, if, after a hearing, the trial court determines that he properly invoked his fifth amendment privilege.

"[A] witness may not be called to the stand in the presence of the jury merely for the purpose of invoking his privilege against self-incrimination. *State* v. *Person,* 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991); *State* v. *Bryant,* supra, [683]; *State* v. *Reddick,* 197 Conn. 115, 126–28, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986)." *State* v. *Dennison,* 220 Conn. 652, 660, 600 A.2d 1343 (1991). This rule is grounded " 'in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations.' " *State* v. *Eichstedt,* 20 Conn. App. 395, 401, 567 A.2d 1237, cert. denied, 214 Conn. 806, 573 A.2d 318 (1990), quoting *Bowles* v. *United States,*

439 F.2d 536, 541–42 (D.C. Cir. 1970), cert. denied, 401 U.S. 995, 91 S. Ct. 1240, 28 L. Ed. 2d 533 (1971).

On remand, the trial court is directed to conduct a hearing. If Gentile does not invoke this privilege, or if he improperly invokes it as to relevant questions that, if answered, would provide admissible evidence, then the convictions are reversed and a new trial is ordered.

### B

The defendant next contends that the trial court improperly refused to strike Ciarlelli's testimony. The facts pertinent to this claim are as follows.

Outside the presence of the jury, Ciarlelli testified that the incident reports he prepared relating to events occurring on August 10, August 16, August 29, August 31 and September 7, 1990, were first dictated by him. The tapes were then transcribed by a secretary at the Hamden police department. The tapes and the transcribed reports were delivered to Ciarlelli, who then reviewed the reports and returned the tapes for reuse. The policy of the Hamden police department was to reuse and therefore erase the tapes. The department had no policy of preserving the tapes.

Ciarlelli's own routine procedure was to read the prepared transcripts and sign them if they appeared true and accurate. He would listen to a tape before returning it for reuse only if something in a transcript did not appear to be accurate. The transcript of the August 10 tape was signed on August 22, the August 16 tape on August 31, the August 29 tape on September 20, the August 31 tape on September 10, and the September 7 tape on September 27.

The trial court refused to strike Ciarlelli's testimony, finding that, although the tapes were intentionally destroyed, that destruction was not done in bad faith. The court found that the state had met its burden of

proving harmlessness because Ciarlelli adopted the transcripts of the tapes shortly after the events and there were no critical inconsistencies between the transcribed reports and the witness' in-court testimony.

It is undisputed that the tapes dictated by Ciarlelli concerning the events to which he testified constitute statements that must be preserved pursuant to Practice Book §§ 749 (2) and 752. *State* v. *Jones,* 29 Conn. App. 304, 307–310, 615 A.2d 149 (1992). It is also agreed that our standard of review is to determine whether the trial court abused its discretion in failing to strike Ciarlelli's testimony. Id.

The appropriate sanctions for the state's failure to comply with discovery are set forth in Practice Book § 755, which requires the trial court either to strike the testimony of the state's witness or to declare a mistrial, if the defendant seeks it and the interests of justice require it. Id., 313. Our Supreme Court has recently set forth the analysis to be applied in such cases. "[I]f a case involves intentional, but not bad faith, destruction of the statement of a state's witness, an automatic sanction of striking that witness' testimony is not required. [*State* v. *Williamson,* 212 Conn. 6, 15–16, 562 A.2d 470 (1989)]. *State* v. *Johnson,* 214 Conn. 161, 168, 571 A.2d 79 (1990). Rather, under such circumstances, it is appropriate that the court weigh the culpability of the state for its failure to make disclosable material available on the one hand, against any resulting prejudice to the defendant on the other. . . . This approach gives broad discretion to the trial court. . . . Where . . . the destruction of a witness' statement, although not in bad faith, is deliberate, the state properly bears the burden of establishing harmlessness. . . . In this context, bad faith means a deliberate act done with intent to deprive the defense of information." (Citations omitted; internal quotation marks omitted.) *State* v. *Cerilli,* 222 Conn. 556, 577, 610 A.2d 1130 (1992).

The defendant does not challenge the trial court's finding that the destruction of the tapes was not done in bad faith. Deliberate destruction of evidence, even with reckless disregard for the defendant's rights, is not enough to establish bad faith. *State* v. *Baldwin,* 224 Conn. 347, 364, 618 A.2d 513 (1993). The defendant does, however, contest the court's finding that the state met its burden of proof of harmless error; in the alternative, he urges us to conclude that "constructive" bad faith occurred, thereby requiring the automatic sanction of striking Ciarlelli's testimony, regardless of whether prejudice was shown.

Absent a showing that the defendant's constitutional right of confrontation was violated by erasure of the tapes, the state need prove only that it was more probable than not that the failure to produce them was harmless. *State* v. *Belle,* 215 Conn. 257, 271, 576 A.2d 139 (1990). Our review of the whole record discloses that the state's failure to produce the tapes did not so adversely affect the defendant's ability to cross-examine Ciarlelli that it infringed upon his constitutional right of confrontation. We conclude that it is more probable than not that the erasure of the tapes was harmless, and that the trial court did not abuse its broad discretion in weighing the state's culpability against the prejudice to the defendant. The destruction or erasure of the tapes was harmless because the result of the trial would not have been different had they been preserved. Id., 268.

The defendant alternatively asks that we expand our Supreme Court's construction of bad faith to include constructive bad faith because the Hamden police department either recklessly or deliberately failed to establish standards for maintaining and preserving evidence, in this case, the dictated tapes. Our Supreme Court has construed bad faith to require a specific intent to thwart the defense. *State* v. *Williamson,*

supra. Bad faith "connotes a deliberate act done with intent to deprive the defense of information." *State* v. *Johnson,* 214 Conn. 161, 168, 571 A.2d 79 (1990). To adopt a "constructive bad faith" standard would necessitate eliminating the specific intent required on the part of law enforcement, and a rewriting of our Supreme Court precedent. This court will not reevaluate Supreme Court precedent. *State* v. *Wilson,* 17 Conn. App. 97, 98 n.1, 550 A.2d 21 (1988).

## II

### The State's Appeal

The state appeals, claiming that the trial court improperly dismissed the defendant's convictions of possession of cocaine with intent to sell and possession of cocaine. We agree with the state's claim.

The defendant contends that the record is insufficient for review by this court. We find the record sufficient. The facts relevant to this issue are not in dispute. The record of the court's finding, while not completely articulating the court's basis for decision, clearly and unambiguously sets forth the legal finding. The parties were heard on the issue and the state properly preserved this claim. The trial court stated that its reading of current case law required dismissal of both of these convictions. We disagree.

Apparently, the trial court treated possession with intent to sell and simple possession as lesser offenses included in the charge of sale of narcotics. The two possession offenses were not lesser offenses included in the sale offense, however, because the possession charges stem from an incident separate from the incident of sales. The three charges of sale of narcotics are supported by separate sales that occurred on August 16, 29 and 31, 1990. The charges of possession are supported by the events that occurred on September 7, 1990, when the warrant was executed at the defendant's house.

We next address the defendant's conviction on the count of simple possession, which both parties concede is a lesser offense included in possession with intent to sell. The state argues that this conviction should have been combined with the conviction on the greater offense of possession with intent to sell and not dismissed outright. While the case law in this area has been somewhat confusing in the past, our Supreme Court settled the law in this state with its decision in *State* v. *Chicano,* 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).[1] Relying on *United States* v. *Estrada,* 751 F.2d 128, 133–35 (2d Cir. 1984), cert. denied, 474 U.S. 830, 106 S. Ct. 97, 88 L. Ed. 2d 79 (1985), our Supreme Court held that the proper procedure when a defendant is convicted of both greater and lesser

[1] In 1984, the United States Court of Appeals for the Second Circuit set forth the procedure for combining lesser offenses with greater offenses in *United States* v. *Estrada,* 751 F.2d 128 (2d Cir. 1984), cert. denied, 474 U.S. 830, 106 S. Ct. 97, 88 L. Ed. 2d 79 (1985). The United States Supreme Court subsequently addressed this issue in *Ball* v. *United States,* 470 U.S. 856, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985), and held that the underlying conviction on a lesser included offense should be vacated in order to avoid possible adverse consequences of the multiple convictions. In 1985, the Second Circuit revisited the issue in *United States* v. *Aiello,* 771 F.2d 621 (2d Cir. 1985), on remand, 814 F.2d 109 (2d Cir. 1987), in light of *Ball,* but affirmed the *Estrada* procedure, finding it to be consistent with *Ball* in practical effect. In *State* v. *Napolean,* 12 Conn. App. 274, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987), this court, relying on state law precedents and the decision in *Ball,* declined to follow the reasoning of *Estrada.* Our Supreme Court settled the issue in *State* v. *Chicano,* 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). In *Chicano,* the court disagreed with *Napolean* and adopted the reasoning of the Second Circuit. Subsequent case law has been consistent with *Chicano.* See *State* v. *Castonguay,* 218 Conn. 486, 512, 590 A.2d 901 (1991); *State* v. *Cavanaugh,* 23 Conn. App. 667, 680, 583 A.2d 1311 (1990). Our Supreme Court has declined to reconsider *Chicano.* *State* v. *Howard,* 221 Conn. 447, 463, 604 A.2d 1294 (1992). In this light, we also decline the defendant's invitation to revisit *Chicano.* We will not revisit Supreme Court precedent for purposes of reexamination or reevaluation. *Greger* v. *Greger,* 22 Conn. App. 596, 599, 578 A.2d 162, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990).

offenses arising out of a single transaction is to combine the conviction on the lesser offense with the conviction on the greater offense and to vacate *only the sentence* of the lesser offense. The conviction on the lesser offense is not merged out of existence. In this way, the conviction on the lesser offense is unaffected and may be resuscitated if the conviction on the greater offense is later vacated for some reason. A conviction on a lesser offense will, in effect, not exist separately as long as the conviction on the greater offense remains intact. This method ensures that there is no danger of double jeopardy or punishment beyond the legislature's intent. *State* v. *Chicano,* supra, 723–25.

Combining the convictions also eliminates the risk of collateral consequences. "A combined lesser conviction could not properly be considered, for instance, in determining a defendant's eligibility for parole, in sentencing him in the future under a recidivist statute or in impeaching his credibility at a later trial." *United States* v. *Aiello,* 771 F.2d 621, 634 (2d Cir. 1985), on remand, 814 F.2d 109 (2d Cir. 1987). The combining method thus "adequately addresses the dual concerns relating to a subsequent reversal of the remaining conviction and subjecting a defendant to the collateral consequences of multiple convictions." *State* v. *Chicano,* supra, 725.

We conclude that the trial court improperly dismissed the two convictions. The court should have combined the conviction on the lesser count of possession of cocaine with that on the greater count of possession of cocaine with intent to sell, and sentenced the defendant on the greater count.

The case is remanded for a hearing on the witness-informant's invocation of his fifth amendment privileges against self-incrimination. If the witness does not invoke the privilege, or if he improperly invokes it as

to relevant questions that, if answered, would provide admissible evidence, the judgment is reversed and the case is remanded for a new trial. In the event that a new trial is not necessary, the judgment is reversed and the case is remanded with direction to render judgment of guilty of three counts of sale of cocaine, one count of possession of marijuana, one count of possession of cocaine with intent to sell by a person who is not drug-dependent and one count of possession of cocaine. The court is further directed to combine the counts of possession of cocaine with intent to sell by a person who is not drug-dependent and possession of cocaine, and to sentence the defendant on three counts of sale of cocaine, one count of possession of marijuana and one count of possession of cocaine with intent to sell by a person who is not drug-dependent.

In this opinion the other judges concurred.