STATE OF CONNECTICUT *v.* CHARLES HARRIS
(AC 19882)

Foti, Spear and Mihalakos, Js.

Argued June 7—officially released October 17, 2000

*Robert E. Byron*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Francis J. McQuade*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Charles Harris, appeals from the judgment of conviction, rendered after

a jury trial, of four counts of drug related charges[1]—in count one, possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b);[2] in count two, possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b);[3] in count four, possession of narcotics in violation of General Statutes § 21a-279 (a);[4] and in count five, possession of narcotics within 1500 feet of a school in violation of General Statues § 21a-279 (d).[5] The defen-

[1] The defendant was acquitted of a fifth charge, count three, possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b), which is not relevant to this appeal.

[2] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells . . . dispenses . . . transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . .

[3] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by . . . transporting with intent to sell or dispense, possessing with the intent to sell or dispense . . . any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . ."

[4] General Statues § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars or be both fined and imprisoned."

[5] General Statutes § 21a-279 (d) provides in relevant part: "Any person who violates subsection (a), (b) or (c) of this section in or on, or within

dant claims that the trial court improperly (1) instructed the jury concerning the defendant's consciousness of guilt, (2) allowed the testimony of a lay witness regarding consciousness of guilt, (3) accepted the jury's verdict of guilty with regard to counts one and four, thereby violating his rights against double jeopardy, and (4) accepted the jury's verdict of guilty despite the fact that the state failed to prove the defendant's guilt beyond a reasonable doubt. We affirm the judgment in part and reverse it in part.

The jury reasonably could have found the following facts. On August 18, 1998, Joseph Jackson, an officer in the Ansonia police department, was on foot patrol in the Olsen Drive Housing Project. While on patrol, Jackson received a tip from a previously reliable informant that the defendant was in the vicinity of building 1-19 of the Olsen Drive Housing Project and was then in possession of a gun. The informant described the defendant as wearing a black hat and red shirt. Jackson contacted Nathan Anderson, an officer who was patrolling the area in a police cruiser, and the two began surveillance of building 1-19 from Anderson's vehicle.

As Jackson and Anderson watched, a car driven by Howard Washington, Sr., drove up to building 1-19 and stopped. A man wearing a black hat and red shirt, whom Jackson recognized as the defendant, then appeared and got into the car with Washington. Jackson and Anderson followed the car out of the housing project and pulled it over. As soon as the car stopped, the defendant got out of the vehicle and approached the police cruiser. Jackson and Earl Stanley, an officer who

one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school . . . shall be imprisoned for a term of two years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of subsection (a), (b) or (c) of this section."

had been dispatched as back-up, both drew their service weapons. Jackson ordered the defendant to stop and place his hands on the cruiser. The defendant was frisked and no gun was found.

Washington exited his vehicle and stood beside it with his hands raised. Anderson approached and questioned Washington, who denied being in possession of either weapons or drugs. When Anderson asked for permission to search his car, Washington stated, "Yeah, go ahead. . . . I have nothing to hide." Anderson and Stanley both approached the car and discovered a bag containing seventy-one individual parcels of crack cocaine on the front seat. Both the defendant and Washington were arrested and charged with possession of the drugs.

At trial, Washington testified for the state and admitted ownership of the car in which the drugs were found, but denied that they were his. Washington claimed to have been unaware of the drugs until they were found by the police. Washington also testified that, after being arrested and placed in the back of the police cruiser, he asked the defendant about the drugs. The defendant replied to the effect that he had to get rid of the drugs to avoid going to jail, and that Washington should claim ownership of them since he had no criminal record and would receive a lighter sentence.

Deputy Chief Samuel Hourliak of the Shelton police department appeared as an expert witness for the state and testified that a person in a car carrying narcotics will sometimes exit the vehicle to distance himself from the drugs. Defense counsel objected to this testimony and to the court's jury instruction regarding consciousness of guilt, for which Hourliak's testimony was deemed probative.

Following a jury trial, the defendant was convicted of counts one, two, four and five and acquitted of count

three, possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b). This appeal followed.

## I

The defendant first claims that the trial court improperly instructed the jury concerning the defendant's consciousness of guilt. The defendant's second claim is that the court improperly admitted certain testimony regarding consciousness of guilt. These claims are so interrelated that we will address them as one. Specifically, the defendant argues that, after Washington testified, the court, over the defendant's objection, permitted Hourliak to testify that a person in a car carrying narcotics will sometimes exit the car to distance himself from the drugs. It is further argued that Hourliak's testimony imputes consciousness of guilt to an innocent act. Even if we assume that the defendant's claims have merit, the court's failure to sustain the defendant's objections and its allegedly erroneous instruction[6] do not implicate the defendant's constitutional rights.

"Because this assumed trial court impropriety is not constitutional in nature, the defendant has the appellate burden to establish harm from the [evidentiary and instructional] error, in order to secure reversal of the judgment. We recognize that we have not been fully consistent in our articulation of the standard for establishing harm. One line of cases states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result.

[6] The trial court's instructions on this issue of consciousness of guilt provided in relevant part that "[i]n any criminal case it is permissible for the state to show that the defendant's conduct after the time of the alleged offense may fairly have been influenced by the criminal act committed by the defendant. That is, the conduct of the defendant shows a consciousness of guilt on his part." This instruction was given as a result of Hourliak's testimony.

. . . Another line of cases states that the defendant must establish that the trial court error caused him substantial prejudice. *State* v. *Askew*, 245 Conn. 351, 371, 716 A.2d 36 (1998). We need not resolve this difference in formulation in the present case, nor need we determine whether there is any functional difference between the two formulations, because we conclude that the defendant has failed to sustain his burden under either standard." (Citations omitted; internal quotation marks omitted.) *State* v. *Shabazz*, 246 Conn. 746, 759, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999). The defendant has failed to meet his burden of demonstrating harmfulness.

First, the most harmful testimony against the defendant was not the testimony of Hourliak, but rather the testimony of Washington, who testified as to the inculpatory statements made to him by the defendant. The defendant has failed to convince this court that the inclusion of Hourliak's testimony, in any way, affected the result of the trial. The inclusion of Hourliak's testimony did not affect, refute or impact Washington's testimony, which, standing alone, was sufficient to convict the defendant. Similarly, the defendant has failed to offer any convincing argument that Hourliak's testimony in any way caused him substantial prejudice.

II

The defendant next claims that the trial court improperly accepted the jury's verdict of guilt with regard to counts one and four, thereby violating his rights against double jeopardy. We agree.

On appeal, the defendant has made two double jeopardy claims, one concerning counts one and four and the other concerning counts two and five. The state conceded that the evidence presented at trial on the element that the defendant must have the intent to

sell narcotics at a specific location that is within the proscribed zone for the purposes of count two was insufficient. See *State* v. *Denby*, 235 Conn. 477, 481–82, 668 A.2d 682 (1995). A claim of double jeopardy cannot survive if one of the counts at issue disappears. While this court is not bound to accept concessions made by a party on appeal; see *State* v. *Heinz*, 193 Conn. 612, 616, 480 A.2d 425 (1984); it is clear from the record before us that we should accept the state's concession with regard to count two. On remand, the conviction of possession of narcotics with intent to sell within 1500 feet of a school must be reversed with direction to render a judgment of acquittal on that count. Because count two must be reversed, no double jeopardy issue survives as to count five.

Similarly, the state further concedes that the defendant's sentences on counts one and four, possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics, violates the prohibition against double jeopardy. Once again, there is sufficient evidence in the record to sustain this concession. See *State* v. *Cecarelli*, 32 Conn. App. 811, 826–28, 631 A.2d 862 (1993). We agree with the state on the issue of double jeopardy, and the case must be remanded with direction to vacate the sentence imposed on count four and to combine that conviction with the conviction on count one. See *State* v. *Chicano*, 216 Conn. 699, 725, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

### III

The defendant's final claim is that the state failed, as a matter of law, to prove his guilt beyond a reasonable doubt. Specifically, the defendant claims, inter alia, that there was no evidence of motive, there was no possession, no physical evidence to connect him to the drugs, and no direct evidence of any kind. We disagree.

"Our Supreme Court has stated: In reviewing [a] sufficiency [of evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994), quoting *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993); *State* v. *Famiglietti*, 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Jarrett*, 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg*, 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990)." (Internal quotation marks omitted.) *State* v. *Ingram*, 43 Conn. App. 801, 809, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997).

"In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 510, 668 A.2d 1288 (1995).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged

beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). Moreover, "[i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). "As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt; *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994); *State* v. *Patterson*, [229 Conn. 328, 332, 641 A.2d 123 (1994)]; *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, supra, 196; see also *State* v. *Sivri*, supra, 231 Conn. 134.

The evidence presented to the jury, which it could accept as credible, was that the defendant knew of the drugs when he told Washington that he, the defendant, had to get rid of the drugs and that he did not want to go to jail. There also was a beeper found on the defendant. The jury could easily infer from this evidence that the drugs belonged to the defendant and that he was in constructive control of them. See *State* v. *Ober*, 24 Conn. App. 347, 351, 508 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, 135, cert. denied, 502 U.S. 915, 112 S. Ct. 319, 116 L. Ed. 2d 260 (1991). We conclude that there was sufficient evidence from which the jury could reasonably conclude that the defendant was guilty beyond a reasonable doubt.

The judgment is reversed in part and the case is remanded with direction to render judgment of not guilty of possession of narcotics with intent to sell within 1500 feet of a school, to merge the defendant's conviction of possession of narcotics with intent to sell by a person who is not drug-dependent with his conviction of possession of narcotics and to vacate his sentence on the crime of possession of narcotics. The judgment is affirmed as to the conviction of possession of narcotics within 1500 feet of a school.[7]

In this opinion the other judges concurred.

[7] The record documents the defendant's total effective sentence as fifteen years, execution suspended after eight years. This appears to be a mathematical miscalculation, as the correct aggregate sentence was thirteen years execution suspended after eight years with five years probation. See *State* v. *Raucci*, 21 Conn. App. 557, 563, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990).