[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON REMAND
These cases are before the court on remand from the Appellate Court.State v. Cecarelli, 32 Conn. App. 811, 631 A.2d 862 (1993). The Appellate Court required a hearing to determine whether Anthony Gentile, a potential witness, would invoke a fifth amendment privilege against self-incrimination if placed on the witness stand. If Gentile did not invoke the privilege, or if he improperly invoked it as to relevant questions that, if answered, would provide admissible evidence, then the guilty verdicts and judgments were to be reversed and the cases remanded for a new trial. Otherwise, the guilty verdicts would stand.[1]
The determination of the fifth amendment question has been complicated by an extraordinary delay in the scheduling of the hearing on remand. Gentile, who has been serving a long term of incarceration for unrelated offenses since prior to the Cecarelli trial in 1991, did invoke thefifth amendment privilege as to every question asked of him at the remand hearing in August, 2001. Gentile invoked the fifth amendment privilege despite the expiration of the five year statute of limitations as to offenses that might be implicated by his testimony. The first issue presented at this time is whether a substantial lapse of time bars prosecution of Gentile for all offenses implicated by his possible answers to the questions posed by Cecarelli' s attorney in August, 2001. If such prosecution is barred, then a second issue is whether Gentile can, nevertheless, invoke the fifth amendment privilege against self-incrimination when his compelled testimony may be adverse to his interests at a future sentence reduction hearing or parole hearing. The state urges a third issue, namely: if the court finds that Gentile's CT Page 10040 invocation of the fifth amendment on August 7, 2001, was improper, should the court deny a new trial to Cecarelli because the state has been prejudiced by Cecarelli's failure to get a remand hearing scheduled in a timely fashion?
 BACKGROUND
The defendant, John Cecarelli, was charged in the first case by substitute information with the crimes of possession of cocaine with intent to sell by a person who is not drug-dependent, possession of cocaine and possession of marijuana. Cecarelli was further charged by informations in second, third, and fourth cases with the crime of sale of cocaine by a person who is not drug-dependent. The events for all four files occurred in August and September, 1990, and are set forth in the Appellate Court decision. State v. Cecarelli, supra, 32 Conn. App. 813-815.
Anthony Gentile, a confidential informant working with the North Haven police department, had outstanding criminal charges in North Haven and was willing to work with the Hamden police. In May, 1990, Gentile informed the Hamden police that Cecarelli was involved in selling illegal drugs. Gentile met with Hamden police several times in the ensuing months. On August 10, 1990, in the town of North Haven, Gentile introduced Cecarelli to David Ciarlelli, a Hamden police officer working undercover. On that same date and in the presence of Ciarlelli, Gentile purchased cocaine from Cecarelli in a controlled buy conducted by Gentile for the North Haven police department. Ciarlelli was present at a further controlled purchase of cocaine by Gentile from Cecarelli at Cecarelli's home in Hamden on August 16, 1990. Ciarlelli also purchased cocaine from Cecarelli at the same time and place. Thereafter, Ciarlelli made further purchases of cocaine from Cecarelli in Hamden on August 29 and August 31, 1990. Hamden police arrested Cecarelli by warrant on September 7, 1990. Upon the execution of a search warrant at Cecarelli's Hamden home on September 7, 1990, the police confiscated drug paraphernalia and cocaine. The North Haven police arrested Gentile on September 13, 1990, on unrelated felony charges.
Cecarelli presented a defense of entrapment at his trial, which commenced on April 22, 1991. He testified on his own behalf in support of that defense. Cecarelli asserted that his fiancee, Roseann DeGolo, was being pressed by Gentile to purchase illegal drugs for Gentile after DeGolo and Gentile met in drug rehabilitation sessions in North Haven. In an effort to keep Gentile from bothering DeGolo, Cecarelli purchased drugs and sold them to Gentile on two or three occasions in April or May, 1990. According to Cecarelli, Gentile persisted in contacting him between May and July of 1990, calling his house as many as seven times a week to ask him to buy drugs. After resisting these requests for several CT Page 10041 months, Cecarelli met with Gentile in North Haven on August 1, 1990. Cecarelli claimed that Gentile proposed a plan whereby Gentile would obtain drugs, sell them to Cecarelli, and then buy them back. Gentile's friend Ciarlelli would also buy the drugs back from Cecarelli. Cecarelli testified that all of the cocaine that he sold to Gentile and Ciarlelli in August, 1990, and all of the drug paraphernalia and cocaine found at his Hamden home on September 7, 1990, was obtained from Gentile himself pursuant to Gentile's scheme.
In support of his claim that Gentile had induced him to take part in illegal activity with the cooperation of the Hamden police, Cecarelli attempted to call Gentile as an adverse witness on April 29, 1991. Gentile was incarcerated at the time, but was at the courthouse pursuant to a writ of habeas corpus ad testificandum. Outside the presence of the jury, Gentile's lawyer, John Keefe, informed the trial court, Dunnell, J., that Gentile would invoke his fifth amendment privilege against self-incrimination as to each and every question asked of him. Despite Cecarelli's insistence that Gentile be put on the witness stand for a hearing to determine if he would, in fact, invoke his fifth amendment rights, the court ruled that such a hearing would be an exercise in futility. Gentile was not brought into the courtroom for a hearing. The jury reached verdicts of guilty on May 1, 1991. The court entered findings of guilt as to possession of marijuana in the first case and as to sale of cocaine by a person who is not drug-dependent in the second, third and fourth cases.
In its decision issued September 21, 1993, the Appellate Court determined that a hearing was essential to discover whether Gentile would, in fact, invoke the fifth amendment in response to each question asked of him. An attorney may not invoke the fifth amendment on behalf of his client in a criminal matter. State v. Cecarelli, supra,32 Conn. App. 818, citing State v. Smith, 201 Conn. 659, 664, 519 A.2d 26
(1986). Such a hearing was also required for a judicial determination as to whether Gentile's claim of privilege against self-incrimination should be sustained. State v. Cecarelli, supra, 819. The cases were remanded so that such a hearing could be held.
The cases lay dormant for a long time after September 21, 1993. Neither the state nor Cecarelli pressed forward with the remand hearing. In the year 2000, an auditor for the state of Connecticut discovered Cecarelli's $50,000 appeal bond unreleased and sitting in Meriden. Awake to the fact that the remand hearing had never been held, the state's attorneys in Meriden rounded up the appellate counsel for Cecarelli, Cecarelli himself, and Gentile. Gentile has been incarcerated continuously since 1991 for serious felony convictions. Cecarelli moved for dismissal of the cases because of the state's delay in bringing the matter back to court. CT Page 10042 He claimed that a hearing at this time would violate his right to expeditious adjudication of his cases. On January 30, 2001, the court,Booth, J., ruled that the issue of prejudice to Cecarelli was not ripe until Cecarelli should receive a ruling on the Gentile fifth amendment issue. The court granted leave to Cecarelli to renew the motion to dismiss, if necessary, after the hearing mandated by the Appellate Court in its remand.
The remand hearing finally was held on August 7, 2001, in Meriden before the court, Taylor, J. The parties secured a transcript of that hearing and submitted briefs in February, 2002. Thereafter, this court heard oral argument on May 29, 2002.
 FACTS
At the remand hearing on August 7, 2001, Gentile claimed hisfifth amendment privilege as to each of fifty-eight questions posed to him by Cecarelli's attorney. All of the questions related to Gentile's involvement with Cecarelli, DeGolo, Ciarlelli, the Hamden police, and the North Haven police up to the time of Cecarelli's trial in 1991; Gentile's pending criminal charges in 1990 and 1991; Gentile's activities as a confidential informant in 1990 and 1991; Cecarelli' s refusal to sell drugs to Gentile on various occasions; and Gentile's participation in the entrapment of Cecarelli. Gentile also invoked the privilege against self-incrimination in response to two questions from the state's attorney asking whether he would have invoked the fifth amendment privilege against self-incrimination if he had taken the stand at Cecarelli's trial in 1991.[2] There is no way to know now whether Gentile would have invoked his fifth amendment privilege against self-incrimination if he had been subjected to a hearing at the time of the Cecarelli trial in 1991. Since Gentile never took the stand at the Cecarelli trial, the 2001 hearing was his first invocation of the fifth amendment in this matter. See State v. Cecarelli, supra, 32 Conn. App. 818-19.
Most of the questions posed to Gentile at the hearing on August 7, 2001, related to Gentile's possible involvement with illegal drug use and sales prior to 1991, and to Gentile's possible collaboration or conspiracy with police departments up to the time of the Cecarelli trial. The questions that were asked in 2001, did relate to Cecarelli's entrapment defense. If the questions had been answered in ways useful to Cecarelli, such responses might have supported his entrapment defense.[3]
 DISCUSSION I CT Page 10043
The principle nemo tenetur seipsum prodere[4] was ratified as a fundamental right in the fifth amendment of the United States constitution. The fifth amendment states: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. "[I]t is the duty of the judge, and not the witness or counsel, to determine whether a witness can properly assert the privilege against self-incrimination." State v. Bryant, 202 Conn. 676, 684 n. 7,523 A.2d 451 (1987), citing Hoffman v. United States, 341 U.S. 479, 486,71 S.Ct. 814, 95 L.Ed. 1118 (1951). "[A] judge, appraising such a claim by a witness, must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." (Internal quotation marks omitted.) State v. Williams, 200 Conn. 310, 319,511 A.2d 1000 (1986). "For a trial court properly to sustain a witness' invocation of the privilege against self incrimination, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." (Internal quotation marks omitted.) Morant v. State,68 Conn. App. 137, 162, ___ A.2d ___, cert. denied, 260 Conn. 914,796 A.2d 558 (2002). "A court may not deny a witness' invocation of thefifth amendment privilege against compelled self-incrimination unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken and that the answer[s] cannot possibly have [a] tendency to incriminate." (Internal quotation marks omitted.) Martin v. Flanagan, 259 Conn. 487, 495, 789 A.2d 979 (2002).
All of the questions posed to Gentile on August 7, 2001, concerned Gentile's drug-related activities in 1990 and earlier and his alleged conspiracy at that time with the police departments of North Haven and Hamden to entrap Cecarelli. As of August 7, 2001, Gentile could not be prosecuted for such possible decade-old offenses. The Connecticut statute limiting prosecution for stale offenses provides: "No person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d [arson murder] or 53a-169 [escape in the first degree], for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed." General Statutes § 54-193 (b). A statute of limitations having to do with criminal offenses is to be "liberally interpreted in favor of repose." United States v. Habig, 390 U.S. 222,227, 88 S.Ct. 926, 19 L.Ed.2d 1055 (1968); United States v. Scharton,285 U.S. 518, 522, 52 S.Ct. 416, 76 L.Ed. 917 (1932).
The state argues that Gentile's invocation of the fifth amendment privilege on August 7, 2001, should be deemed to relate back to April 29, 1991, because Gentile's attorney made it clear on the earlier date that Gentile would be invoking the fifth amendment if called to testify that CT Page 10044 day. The state's claim is unavailing in light of the Appellate Court's decision that the privilege could not be invoked by proxy in a criminal proceeding. See State v. Cecarelli, supra, 32 Conn. App. 818. The claim of the fifth amendment privilege in 2001, does not relate back to 1991. This court must determine whether the invocation of the fifth amendment was proper at the time it was invoked, August 7, 2001. After a careful review of the questions asked of Gentile on August 7, 2001, a reading of the transcript from the Cecarelli trial, and a consideration of the setting and all of the circumstances as to Gentile's possible testimony, this court finds that Gentile's answers to the questions are insulated from adverse effect upon Gentile by the five year statute of limitations. Because of the substantial passage of time, there is no possibility that Gentile's testimony in response to the questions posed to him on August 7, 2001, could tend to incriminate him.[5]
 II
The offenses for which Gentile is incarcerated are felonies that are unrelated to his possible involvement with Cecarelli and the Hamden and North Haven police departments in 1990 and 1991.[6] Although Gentile has been incarcerated for a substantial period of time dating back to September, 1990, he might yet seek a sentence reduction or early release on parole.[7] The state argues that the revelation of previously unknown criminal activity in 1990 or earlier, that is not related to the offenses for which Gentile is incarcerated, might impede Gentile's potential for sentence reduction. The question is whether such compelled revelations would implicate Gentile's fifth amendment privilege against self-incrimination in the context of a sentence modification hearing or a parole hearing.
The opportunity for a sentence modification hearing is a legislative creation. "The jurisdiction of the sentencing court terminates when the sentence is put into effect, and that court may no longer take any action affecting the sentence unless it has been expressly authorized to act" by the legislature. State v. Tuszynski, 23 Conn. App. 201, 206, 579 A.2d 1100
(1990). The authority to act upon a motion for sentence reduction is set forth at General Statutes § 53a-39 (b), which provides: "At any time during the period of a definite sentence of more than three years, upon agreement of the defendant and the state's attorney to seek review of the sentence, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced." By its express terms, the statute imposes three hurdles for the offender to overcome: agreement to a hearing by the offender and the state's attorney, a showing of good cause, and judicial CT Page 10045 discretion. When these requisites are not met, "the court ha[s] no power to modify the sentence." State v. Bawza, 20 Conn. App. 467, 468,567 A.2d 1262 (1990). The eligibility restrictions on sentence modification, imposed by the legislature, are constitutional. Mainierov. Liburdi, 214 Conn. 717, 724, 573 A.2d 1207 (1990).
A witness' fifth amendment privilege against self-incrimination, even as to the crimes to which he has pleaded guilty, continues until his sentencing for those crimes. State v. Williams, supra, 200 Conn. 321. "Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." Mitchellv. United States, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424
(1999). "It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final." Id.
The opportunity for a sentence reduction hearing pursuant to General Statutes § 53a-39 (b) is not constitutionally mandated. Such a hearing occurs only at the request of the offender and with the permission of the state's attorney. The outcome is at the discretion of the original sentencing judge.[8] Sentence reduction is not an entitlement. If information on unrelated offenses surfaces at a sentence reduction hearing because of previous compelled testimony by the offender, the offender's due process rights have not been impugned. After a witness has been sentenced, "he could no longer have validly invoked his federal constitutional fifth amendment privilege against self-incrimination as to those crimes for which he was sentenced." Statev. Williams, supra, 200 Conn. 321.[9] Once Gentile's sentence has been fixed, he does not retain a right to invoke the fifth amendment as to unrelated offenses solely because of the speculative possibility of a sentence reduction hearing.
Just as an inmate does not have the right to demand a sentence reduction hearing if his sentence is more than three years, so also he does not have the right to demand or even apply for parole. A prisoner in Connecticut has no constitutional or statutorily created liberty interest in parole release. Vincenzo v. Warden, 26 Conn. App. 132, 138, 599 A.2d 31
(1991). "Unless a liberty interest in parole exists, the procedures followed in the parole determination are not required to comport with standards of fundamental fairness." Id., 144. Gentile does not retain the right to assert a fifth amendment privilege against self-incrimination, as to criminal activity with which he will never be charged, in order to make a better presentation at a parole hearing.[10]
CT Page 10046
 III
Through no fault of any personnel now representing the state in this matter, this case was allowed to fall through the cracks for seven years. The state urges that the burden was on Cecarelli, as the prevailing party on this appellate issue, to precipitate a hearing on Gentile's fifth amendment rights. This court is unable to find any authority in support of the state's claim. The state asserts that it is prejudiced by the delay while Cecarelli has benefited from the passage of time because he "sat on his appellate rights and allowed the statute of limitations to run."
It is true that Cecarelli may have benefited from the delay since the passage of the statute of limitations as to Gentile's possible crimes means that Gentile can be compelled to testify in this case. A defendant does not have "a right to have the proceedings against him continued indefinitely in anticipation of an unavailable witness' becoming available." State v. Mendez, 45 Conn. App. 282, 284, 696 A.2d 352
(1997). Nevertheless, once a substantial delay has occurred, the defendant can use that delay to his advantage. It is the state, not Cecarelli, that is claiming prejudice because Gentile can be compelled to testify after the lapse of ten years since the original trial. The state has not made clear what prejudice, if any, it has incurred by the delay. The loss of an established conviction is not detrimental to the state when that conviction was based upon a wrongful denial of the defendant's opportunity to present his defense. Although Cecarelli has raised a speedy trial issue in a separate motion, the issue before this court at this time is only the ability to compel the testimony of Gentile. Cecarelli is not prejudiced by the compelling of Gentile's testimony.
Neither the state nor Cecarelli took the initiative to bring about a remand hearing until the passage of seven years from the decision of the Appellate Court on Cecarelli's appeal. The party claiming to be injured by a delay cannot be heard to complain unless some effort was made to lessen the delay; this is so absent deception or dilatory tactics by the other side. See State v. Wall, 40 Conn. App. 643, 673 A.2d 530, cert. denied,237 Conn. 924, 677 A.2d 950 (1996).
 CONCLUSION
At the August 7, 2001 remand hearing, Gentile improperly invoked afifth amendment privilege against self-incrimination and refused to answer questions relevant to Cecarelli's defense. In accordance with the instructions of the Appellate Court, the judgment is reversed and a new trial is ordered. CT Page 10047
 __________________ Winslow, J.